**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0001367
29-OCT-2014
08:11 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR BNC
MORTGAGE PASS THROUGH CERTIFICATES SERIES 2006-2,
Plaintiff/Appellee,
v.
AVELINA SALVACION, JOHN DOES 1-10, JANE DOES 1-10, DOE
PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10,
DOE ENTITIES 1-10, AND DOE GOVERNMENT UNITS 1-10,
Defendant/Appellant

---

AVELINA SALVACION,
Counterclaim-Plaintiff/Appellant,
v.
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR BNC
MORTGAGE PASS THROUGH CERTIFICATES SERIES 2006-2;
and DOES 1-150,
Counterclaim-Defendant/Appellee

NO. CAAP-13-0001367

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 09-1-0007)

OCTOBER 29, 2014

FOLEY, PRESIDING J., FUJISE AND LEONARD, JJ.

OPINION OF THE COURT BY FOLEY, J.

Defendant/Counterclaim-Plaintiff/Appellant, Avelina Salvacion (**Salvacion**), appeals from the May 22, 2013 "Judgment on Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment and Decree of Foreclosure Against All Defendants on Complaint Filed January 15, 2009 and Order Granting Plaintiff/Counterclaim Defendant's Motion for Summary Judgment as to All Counts of Defendant/Counterclaimant Avelina Salvacion's Counterclaim, Filed January 13, 2012," entered in the Circuit Court of the Fifth Circuit[1] (**circuit court**).

## I.

On appeal, Salvacion contends the circuit court erred when it granted "Plaintiff's Motion for Summary Judgment and Decree of Foreclosure Against All Defendants on Complaint Filed January 15, 2009" (**2009 MSJ**) and "Plaintiff/Counterclaim Defendant's Motion for Summary Judgment as to All Counts of Defendant/Counterclaimant Avelina Salvacion's Counterclaim, Filed January 13, 2012" (**Counterclaim MSJ**) in favor of Plaintiff/Counterclaim-Defendant/Appellee, U.S. Bank National Association (**USBNA**). Although not raised as a point of error on appeal, Salvacion also argues in her opening brief that the circuit court abused its discretion when it declined to grant Salvacion's request for a continuance pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 56(f).

## II.

### A. Motion for Summary Judgment

The appellate court reviews "the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107 Hawaiʻi 48, 56, 109 P.3d 689, 697 (2005).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

[1] The Honorable Randal G.B. Valenciano presided.

2

> is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. at 56, 109 P.3d at 697 (quoting Durette v. Plastic Recycling, Inc., 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004)).

The Hawai'i Supreme Court has set forth the following burden-shifting paradigm for situations where the non-movant bears the burden of proof at trial:

> The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.
>
> First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the nonmoving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.
>
> Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law.

Ralston v. Yim, 129 Hawai'i 46, 56-57, 292 P.3d 1276, 1286-87 (2013) (quoting French v. Hawaii Pizza Hut, Inc., 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004)).

## B. HRCP Rule 56(f) Request for Continuance

"A trial court's decision to deny a request for a continuance pursuant to HRCP Rule 56(f) will not be reversed absent an abuse of discretion." Kaleikini v. Yoshioka, 128 Hawai'i 53, 67, 283 P.3d 60, 74 (2012) (citations and internal quotation marks omitted).

> [T]he request must demonstrate how postponement of a ruling on the motion will enable him or her, by discovery or other means, to rebut the movants' showing of absence of a genuine

3

issue of fact. An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

Associates Fin. Services of Hawaii, Inc. v. Richardson, 99 Hawai'i 446, 454, 56 P.3d 748, 756 (App. 2002) (quoting Josue v. Isuzu Motors Am., Inc., 87 Hawai'i 413, 416, 958 P.2d 535, 538 (1998)).

## III.

**A.   The circuit court did not err in granting USBNA's 2009 MSJ and Counterclaim MSJ.**

1.   There is no genuine issue of material fact as to whether fraud was committed because the actions of Salvacion's mortgage broker cannot be imputed onto USBNA so as to invalidate the Adjustable Rate Note (**Note**) and the mortgage on Salvacion's property that secured the Note (**Mortgage**).

On appeal, Salvacion contends the circuit court erred when it granted USBNA's 2009 MSJ and Counterclaim MSJ because "there exists a genuine issue of material facts as to whether the [Note] and [Mortgage] are void because of the gross fraud committed against [Salvacion]." Salvacion does not allege that USBNA's predecessors, BNC Mortgage, Inc. (**BNC Mortgage**) and Mortgage Electronic Registration Systems, Inc. (**MERS**) (together, **Lenders**) committed fraud. Instead, Salvacion argues that her mortgage broker, James Lull (**Lull**) fraudulently induced her to refinance her property and invest $72,000 of the equity with him in a short term investment agreement. USBNA provided evidence that Lenders were not party to the investment agreement between Salvacion and Lull. The record indicates the only agreements between Lenders and Salvacion relate to the Note and Mortgage.

Furthermore, this court has held that a mortgage contract is between a lender and borrower, not the borrower's mortgage broker. See City Bank v. Abad, 106 Hawai'i 406, 105 P.3d 1212 (App. 2005) (holding that a mortgage broker is not party to a contract between a lender and a borrower); cf. Beneficial Hawaii, Inc. v. Kida, 96 Hawai'i 289, 30 P.3d 895

4

(2001) (holding that a mortgage broker, who also acts as a lender, is party to a contract with a borrower). Similarly, the U.S. District Court of Hawaiʻi has held that "[i]n general, a lender is not liable for the actions of a mortgage broker unless there [sic] 'there is an agency relationship between the lender and the broker.'" Menashe v. Bank of New York, 850 F. Supp.2d 1120, 1135 (D. Haw. 2012) (quoting Gonzalez v. First Franklin Loan Servs., 2010 WL 144862, at *13 (E.D. Cal. Jan. 11, 2010).

In order to hold USBNA liable for Lull's conduct, Salvacion needed to offer evidence showing that Lenders granted Lull actual or apparent authority. It is well established that "[a] party opposing a motion for summary judgment cannot discharge his or her burden by alleging conclusions, 'nor is [the party] entitled to a trial on the basis of a hope that [the party] can produce some evidence at that time.'" Henderson v. Prof'l Coatings Corp., 72 Haw. 387, 401, 819 P.2d 84, 92 (1991) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2727 (1983)). In Salvacion's "Memorandum in Opposition to [Counterclaim MSJ]," (**Memorandum in Opposition**) filed June 20, 2012, Salvacion offered only a brief conclusory statement alleging that Lenders were acting "through its agent, Mr. Lull." Salvacion did not provide any evidence that would raise a genuine issue as to whether Lull was acting as Lender's agent when he entered into the investment scheme with Salvacion.

2.  There is no genuine issue of material fact as to whether Lenders engaged in unfair and deceptive practices in violation of Hawaii Revised Statutes (**HRS**) § 480-2 (2008 Repl.) so as to invalidate the Note and Mortgage.

Salvacion also argues that summary judgment was improper because there is a genuine issue of material fact as to whether Lenders and Lull engaged in unfair or deceptive practices so to violate HRS Chapter 480. As a threshold matter, Hawaiʻi law indicates that a mortgage loan transaction "falls within the ambit of HRS [Chapter] 480[.]" Hawaii Cmty. Fed. Credit Union v.

5

Keka, 94 Hawai'i 213, 227, 11 P.3d 1, 15 (2000) (citing Cieri v. Leticia Query Realty, Inc., 80 Hawai'i 54, 905 P.2d 29 (1995)). HRS § 480-2 states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Under Hawai'i law, "[a] deceptive act or practice is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material." Courbat v. Dahana Ranch, Inc., 111 Hawai'i 254, 262, 141 P.3d 427, 435 (2006) (citation, internal quotation marks and brackets omitted).

Salvacion's first HRS § 480-2 argument is that the loan with Lenders constituted "unfair and deceptive predatory lending" because Salvacion's monthly mortgage payments were nearly $1,000 more than her gross monthly income. USBNA claims that summary judgment was appropriate as a matter of law because "lenders generally owe no duty to a borrower not to place borrowers in a loan where there was a foreseeable risk borrowers would be unable to pay." Caniadido v. Countrywide Bank, FSB, 2011 WL 2470640, at *10 (D. Haw. Jun. 20, 2011) (citation and internal quotation marks omitted). A Ninth Circuit opinion, however, has called into question whether a negligence analysis is the proper standard for determining when a lender has engaged in an unfair or deceptive practice under HRS § 480-2. See Compton v. Countrywide Fin. Corp., 761 F.3d 1046 (9th Cir. 2014). Under the facts of this case, however, this court need not address this issue. Instead, the facts presented are sufficient to create a prima facie showing that Salvacion was not misled by Lenders' practices and, therefore, Lenders did not violate HRS § 480-2.

Salvacion's Memorandum in Opposition indicates that she relied upon the advice of Lull to reach the conclusion that she could afford the higher monthly mortgage payment. Salvacion's mistaken belief that she could afford payments that were larger than her gross monthly income was not the result of Lenders'

actions, but, instead, were the result of her investment agreement with Lull.

Salvacion fails to provide specific facts about how Lenders' acts or practices misled her so to raise a genuine issue worthy of trial. Notably, Salvacion does not claim that she was unaware of the high monthly mortgage payments. Instead, Salvacion argues that negotiations with Lull and representations, that derived from those negotiations "caused [her], 'as a natural and probable result,' to believe that she would be able to afford the high monthly mortgages with the $72,284, until she refinanced to a lower interest rate."

The Hawai'i Supreme Court has defined "deception" under HRS § 480-2 as "an act causing, as a natural and probable result, a person to do that which he or she would not otherwise do." Keka, 94 Hawai'i at 228, 11 P.3d at 16 (brackets omitted) (quoting State ex rel. Bronster v. United States Steel Corp., 82 Hawai'i 32, 51, 919 P.2d 294, 313 (1996)). Here, the actions of Lenders did not cause Salvacion to agree to pay a higher monthly mortgage payments than she could afford. Rather, Salvacion knowingly agreed to pay the higher monthly mortgage rate so that she could participate in Lull's potentially lucrative investment scheme. Given the facts presented, the only inference that can reasonably be drawn is that Lenders did not mislead Salvacion into believing she could afford higher mortgage payments nor did Lenders cause her to enter into a loan that she would not have otherwise entered.

Salvacion's second HRS § 480-2 argument is that USBNA should be liable for Lull's actions. Lull's culpability cannot be imputed onto Lenders absent a showing of an agency relationship. As noted supra, Salvacion did not offer any evidence that would give rise to a genuine issue of whether an agency relationship existed and, instead, relied upon unsupported allegations that Lull was acting as Lenders' agent because he brokered the Mortgage.

3.    There is no genuine issue of material fact as to USBNA's standing to foreclose on the Mortgage because Salvacion does not have standing to challenge the Mortgage assignment.

Salvacion argues that summary judgment was inappropriate because there is a genuine issue of material fact as to whether Lenders properly assigned the Mortgage to USBNA.[2]

USBNA produced documents that showed a direct chain of title from the initial lender, BNC Mortgage, to USBNA so to constitute a prima facie showing of its right to foreclose.[3]  A party who shows a "direct chain of paper title that [the party] is the owner of land demonstrates prima facie evidence of their contents and that title is vested in that [party.]" Deutsche Bank Trust Co. v. Beesley, 2012 WL 5383555, at *3 (D. Haw. Oct. 30, 2012) (internal quotation marks omitted); see Apana v. Kapano, 20 Haw. 399, 403 (Haw. Terr. 1911).

In her Memorandum in Opposition, Salvacion challenged the validity of the assignment from MERS to USBNA.  Salvacion argues that, under the Trust agreement, USBNA did not have the authority to accept new assets into the Trust and, therefore, lacked standing to foreclose on Salvacion's Mortgage.  Recent decisions by State and Federal courts in Hawai'i have "rejected identical arguments that contesting the validity of assignments to securitization trusts." Wells Fargo Bank v. Hensley, No.

---

[2]    Salvacion also contends that USBNA is not a holder in due course and is, therefore, "liable for any wrongdoing by its assignors pursuant to HRS § 490:3-306."  Because this court determines there is no genuine issue of material fact as to whether Lull was acting as Lenders' agent, whether Lenders committed fraud in the inducement, or whether Lenders violated HRS §§ 480-2 and 480-12 (2008 Repl.), this claim has no bearing on the outcome of this appeal.

[3]    The record indicates that on August 3, 2006, Salvacion executed the Note to lender, BNC Mortgage.  On August 3, 2006, Salvacion also executed the Mortgage on her Property to mortgagee, MERS, acting as nominee for BNC Mortgage.  The State of Hawai'i Bureau of Conveyances recorded the Mortgage on August 14, 2006 as Document Number 2006-149125.  On April 21, 2008, MERS assigned the Note and Mortgage to USBNA, as Trustee for the "BNC Mortgage Loan Trust 2006-2" (**Trust**).  This assignment was recorded in the Bureau of Conveyances on June 20, 2008, under Document Number 2008-099769.  Thus, USBNA made a prima facie showing that it was the holder of the Note and Mortgage and had the right to foreclose.

8

CAAP-12-0000089 at *1 (App. Mar. 28, 2013) (SDO); Benoist v. U.S. Bank Nat'l Ass'n., 2012 WL 3202180, at *5 (D. Haw. Aug. 3, 2012) (holding that borrowers could not set aside assignment of a mortgage even when the terms of a pooling service agreement (**PSA**) were not followed); Bank of New York Mellon v. Sakala, 2012 WL 1424665, at *5 (D. Haw. Apr. 24, 2012) (stating that "[C]ourts have held that noncompliance with the terms of a PSA is not relevant to the validity of an assignment."); White v. IndyMac Bank, FSB, 2012 WL 966638, at 6 (D. Haw. Mar. 20, 2012) (stating "The argument that parties lose their interest in a loan when it is assigned to a securitization trust or REMIC has been rejected by numerous courts.").

Typically, borrowers do not have standing to challenge the validity of an assignment of its loans because they are not parties to the agreement and because noncompliance with a trust's governing document is irrelevant to the assignee's standing to foreclose. See Hensley, SDO at *1 (concluding that "[N]oncompliance with a PSA is irrelevant to the assignee's standing to foreclose."); Abubo v. Bank of New York Mellon, 2011 WL 6011787, at *8 (D. Haw. Nov. 30, 2011) (discussing several cases that held the same). Hawai'i courts may recognize exceptions when a challenge would deem the assignment void, not voidable. See Beesley, 2012 WL 5383555, at *4 (stating that "[d]ebtors lack standing to challenge voidable assignments"); Paik-Apau v. Deutsche Bank Nat'l Trust Co., 2012 WL 5207495, at *4 (D. Haw. Oct. 19, 2012).

Salvacion cites two cases from other jurisdictions for the proposition that, non-compliance with the terms of a trust's governing document renders the assignment void, and therefore, Salvacion has standing to challenge the mortgage assignment. See Glaski v. Bank of America, Nat'l Ass'n, 160 Cal Rptr.3d 449, 462-63 (2013) (interpreting New York trust law); see also In re Saldivar, 2013 WL 2452699 (Bankr. S.D. Tex. Jun. 5, 2013), at *4-5 (same). However, these two cases are the clear minority on the matter and run counter to the majority of decisions that have

9

expressly rejected such assignment challenges. See Mendoza v. JPMorgan Chase Bank, N.A., 175 Cal Rptr.3d 880, 890 (2014) (holding that "We can find no state or federal cases to support the Glaski analysis and will follow the federal lead in rejecting this minority holding."); Subramani v. Wells Fargo Bank N.A., 2013 WL 5913789, at *3 (N.D. Cal. Oct. 31, 2013) (declining to follow Glaski's minority rule and following the majority rule that "[A]n unrelated third party to an alleged securitization lacked standing to enforce any agreements (like a PSA) relating to such transactions[.]"); In re Sandri, 501 B.R. 369, 374 (Bankr. N.D. Cal. 2013) (stating that "Glaski is inconsistent with the majority line of cases and is based on a questionable analysis of New York trust law."). In addition, the Glaski and Saldivar approach is inapposite to Hawaii's approach because Hawai'i courts have determined that non-compliance with the terms of a governing document does not render the assignment void, but merely voidable. See Beesley, 2012 WL 5383555, at *5 (holding that non-compliance with the terms of PSA agreement when the loan was transferred into trust after the cut-off date renders the agreement voidable); Paik-Apau, 2012 WL 5207495, at *4 (D. Haw. Oct. 19, 2012) (same).

B.    **The circuit court did not err when it denied Salvacion's request for a HRCP Rule 56(f) continuance because further discovery would not have rebutted USBNA's showing of absence of genuine issue of material fact.**

Salvacion contends the circuit court erroneously denied her request for a continuance pursuant to HRCP Rule 56(f). Salvacion made her request for a continuance on December 16, 2011 in her Memorandum in Opposition to USBNA's 2009 MSJ. Salvacion argued that a continuance would give an "opportunity for [her] to obtain additional documents to support her position, such as verification of [USBNA] Trust's actual ownership of her Note and Mortgage as required under its own Trust Agreement and the relevant Uniform Commercial Code laws, as adopted in Hawaii [Hawai'i]."

10

The Hawaiʻi Supreme Court has noted that "HRCP Rule 56(f) is the appropriate means by which parties can ensure that they have adequate time to respond to a motion for summary judgment." Ralston, 129 Hawaiʻi at 63, 292 P.3d at 1293. A request for a continuance pursuant to HRCP Rule 56(f)[4] "must demonstrate how postponement of a ruling on the motion will enable the moving party, by discovery or other means, to rebut the movant's showing of absence of a genuine issue of fact." Kaleikini, 128 Hawaiʻi at 87, 283 P.3d at 94 (brackets omitted), (quoting Josue, 87 Hawaiʻi at 416, 958 P.2d at 538). In Ralston, the supreme court clarified that "summary judgment should not be granted when there is still time for the non-movant to develop evidence for use at trial, unless there is a basis for concluding . . . that such an effort would be futile." Ralston, 129 Hawaiʻi at 63, 292 P.3d at 1293.

In Salvacion's request for a HRCP Rule 56(f) continuance, she argued that a continuance would allow her to conduct discovery relevant to whether USBNA's assignment of the Mortgage was proper and whether USBNA has standing to bring the foreclosure action. Any further discovery into Salvacion's assignment claims would have been futile because, as a matter of law, Salvacion does not have standing to challenge the assignment of her Mortgage. Further discovery would not have "rebut[ted] [USBNA's] showing of absence of genuine issue of fact." The circuit court's denial of Salvacion's request for a HRCP Rule

---

[4] HRCP Rule 56(f) provides:

**Rule 56.    SUMMARY JUDGMENT.**

. . . .

**(f)    When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

56(f) continuance was not an abuse of discretion.  <u>Kaleikini</u>, 128 Hawai'i at 87, 283 P.3d at 94.

**IV.**

The May 22, 2013 "Judgment on Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment and Decree of Foreclosure Against All Defendants on Complaint Filed January 15, 2009 and Order Granting Plaintiff/Counterclaim Defendant's Motion for Summary Judgment as to All Counts of Defendant/Counterclaimant Avelina Salvacion's Counterclaim, Filed January 13, 2012," entered in the Circuit Court of the Fifth Circuit is affirmed.

On the briefs:

Gary Victor Dubin
Frederick J. Arensmeyer
Zeina Jafar
Richard T. Forrester
(Dubin Law Offices)
for Defendant/Counterclaim-
Plaintiff/Appellant.

Carol A. Eblen
Edmund K. Saffery
Lynda L. Arakawa
(Goodsill Anderson Quinn & Stifel)
for Plaintiff/Counterclaim-
Defendant/Appellee.