Electronically Filed
Supreme Court
SCWC-14-0001134
06-JUN-2017
08:35 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

U.S. BANK N.A. IN ITS CAPACITY AS TRUSTEE FOR THE REGISTERED
HOLDERS OF MASTR ASSET BACKED SECURITIES TRUST 2005-NC1,
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-NC1,
Respondent/Plaintiff-Appellee,

vs.

JOSEPH KEAOULA MATTOS, CHANELLE LEOLA MENESES,
Petitioners/Defendants-Appellants,

and

CITIFINANCIAL, INC., ASSOCIATION OF APARTMENT OWNERS OF
TERRAZA/CORTEBELLA/LAS BRISAS/TIBURON,
EWA BY GENTRY COMMUNITY ASSOCIATION,
Respondents/Defendants-Appellees.

_____

SCWC-14-0001134

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0001134; CIVIL NO. 11-1-1539)

JUNE 6, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

This appeal arises from a judicial decree of foreclosure granted in favor of plaintiff "U.S. Bank N.A. in its Capacity as Trustee for the registered holders of MASTR Asset Backed

Securities Trust 2005-NC1, Mortgage Pass-Through Certificates, Series 2005-NC1" ("U.S. Bank") against defendants Joseph Keaoula Mattos ("Mattos") and Chanelle Leola Meneses ("Meneses") (collectively, "Defendants"). At issue is whether the Circuit Court of the First Circuit[1] ("circuit court") properly granted U.S. Bank's "Motion for Summary Judgment and Decree of Foreclosure Against All Defendants on Complaint Filed July 21, 2011" ("motion" or "motion for summary judgment"). In its published opinion, the Intermediate Court of Appeals ("ICA") affirmed the circuit court. U.S. Bank N.A. v. Mattos, 137 Hawai'i 209, 367 P.3d 703 (App. 2016).[2]

Defendants assert the ICA erred in concluding that the circuit court properly granted summary judgment due to the existence of genuine issues of material fact. Specifically, Defendants allege U.S. Bank lacked standing to foreclose because:

> 1.  the two mortgage assignments to the securitized trust in the chain of U.S. Bank's alleged ownership of [Defendants'] loan were "robo-signed" by persons with insufficient authority or personal knowledge as to what they swore to, and whose signatures differed among similar mortgage assignments that they had supposedly signed and/or notarized;
>
> 2.  the two mortgage assignments to the securitized trust in the chain of U.S. Bank's alleged ownership of

___

[1]  The Honorable Judge Bert I. Ayabe presided.

[2]  The ICA initially issued its decision in the form of a summary disposition order ("SDO"). U.S. Bank filed a motion for publication, which the ICA granted, entering its Published Opinion on February 12, 2016.

2

> [Defendants'] loan violated the securitized trust's governing instrument, known as its Pooling and Servicing Agreement [("PSA")]. . . .
>
> 3. the two mortgage assignments to the securitized trust in the chain of U.S. Bank's alleged ownership of [Defendants'] loan were unproven as supported only by hearsay declarations inadmissible pursuant to [Hawai'i Rules of Civil Procedure ("HRCP")] Rule 56(e) and Hawaii Evidence Rule 803(b)(3)[sic][3] as U.S. Bank's Declarants had no personal knowledge of how earlier business records had been compiled in addition to the two mortgage assignments having been invalid, supra.

We address the third issue on certiorari first. We hold that the ICA erred by concluding the declaration of Richard Work ("Work"), the Contract Management Coordinator of Ocwen Loan Servicing, LLC ("Ocwen"), rendered him a "qualified witness" under State v. Fitzwater, 122 Hawai'i 354, 227 P.3d 520 (2010) for U.S. Bank's records under the Hawai'i Rules of Evidence ("HRE") Rule 803(b)(6) hearsay exception for records of regularly conducted activity. In addition, U.S. Bank failed to establish that it was a holder entitled to enforce the note at the time the foreclosure complaint was filed. See Bank of America, N.A. v. Reyes-Toledo, 139 Hawai'i 361, 370-71, 390 P.3d 1248, 1257-58 (2017).

With respect to the first issue on certiorari, because it is unclear what Defendants mean by "robo-signing" and because a ruling on the legal effect of "robo-signing" is not necessary to

---

[3] It appears this is a typographical error, as the ICA Opinion is based on Rule 803(b)(6), the hearsay exception for "[r]ecords of regularly conducted activity." Rule 803(b)(3) is the hearsay exception for "[t]hen existing mental, emotional, or physical condition," and is clearly inapplicable.

3

the determination of this case, we set aside the ICA's holding that conclusory assertions that fail to offer factual allegations or a legal theory indicating how alleged "robo-signing" caused harm to a mortgagee are insufficient to establish a defense in a foreclosure action.  Addressing the factual allegations underlying the "robo-signing" claim, however, we conclude there is a genuine issue of material fact as to whether Ocwen had the authority to sign the second assignment of mortgage to U.S. Bank.

With respect to the second issue on certiorari, we affirm the ICA in part.  We adopt the majority rule followed by the ICA in U.S. Bank Nat. Ass'n v. Salvacion, 134 Hawai'i 170, 338 P.3d 1185 (App. 2014) and hold that a third party unrelated to a mortgage securitization pooling and servicing agreement lacks standing to enforce an alleged violation of its terms unless the violation renders the mortgage assignment void, rather than voidable, but we limit the holding to the judicial foreclosure context.

Accordingly, we vacate the ICA's March 9, 2016 Judgment on Appeal, as well as the circuit court's August 26, 2014 Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment and Decree of Foreclosure Against All Defendants on Complaint Filed July 21, 2011, and remand this case to the circuit court.

## II.  Background

On October 15, 2004, Mattos signed a mortgage and a note for $296,000 in favor of New Century Mortgage Corporation ("New Century").  The mortgage was recorded in the Land Court on October 25, 2004.

On July 21, 2011, U.S. Bank filed a foreclosure complaint.  U.S. Bank alleged it was the owner of the mortgage by virtue of an Assignment of Mortgage dated January 3, 2007 ("first assignment") and an Assignment of Mortgage dated September 10, 2010 ("second assignment"), both of which were recorded in the Land Court (the mortgage, first assignment, and second assignment are sometimes collectively referred to as "the mortgage documents").  Attached to the complaint were copies of the note with an allonge[4] and the mortgage documents.  The allonge was apparently executed by Ocwen as New Century's attorney-in-fact pursuant to a Limited Power of Attorney.  The allonge was dated June 22, 2010, although it stated it was effective January 31, 2005.

On January 23, 2014, U.S. Bank filed a motion for summary judgment.  The motion was supported by a declaration from Work,

---

[4]     "An 'allonge' is defined as a slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements."  Mortg. Elec. Registration Sys., Inc. v. Wise, 130 Hawaiʻi 11, 14 n.6, 304 P.3d 1192, 1195 n.6 (2013).

which purported to authenticate various attached exhibits, including the underlying note, allonge, and mortgage documents.

On April 15, 2014, Defendants filed their opposition to U.S. Bank's motion. In summary, Defendants alleged that U.S. Bank lacked standing to foreclose because (1) it failed to show it was the holder of the note at the time of foreclosure, (2) the mortgage assignments contained various alleged defects, and (3) the motion's supporting documents were inadmissible hearsay. Defendants' opposition was also based on an affidavit from Marla Giddings ("Giddings"), a purported forensic and securitization analysis expert retained to opine as to whether U.S. Bank owned the note and mortgage. Giddings asserted the assignments "suffer[ed] from several fatal flaws," namely that the signers and notaries were known "robo-signers" who were employed by Ocwen and appeared to have differing signatures on several documents. Giddings also claimed the assignments violated the securitized trust's PSA. On July 18, 2014, after a hearing, the circuit court granted U.S. Bank's motion for summary judgment.

Defendants appealed to the ICA. In its opinion, the ICA rejected Defendants' arguments and affirmed the grant of summary judgment in U.S. Bank's favor. Mattos, 137 Hawai'i at 214, 367 P.3d at 708. The ICA rejected Defendants' first argument regarding "robo-signing" because their opposition to U.S. Bank's motion "failed to assert facts or law explaining how the alleged

6

'robo-signing' caused them harm or damages." 137 Hawai‘i at 210, 367 P.3d at 704. The ICA rejected Defendants' second argument that the assignments were void, holding, "This court, however, has held that the non-compliance with a PSA does not render the assignment void. Given our holding in Salvacion, Appellants have no standing to challenge U.S. Bank's alleged noncompliance with the PSA." 137 Hawai‘i at 211, 367 P.3d at 705. Finally, the ICA rejected Defendants' third argument, determining that Work was a "qualified witness" pursuant to Fitzwater who was able to authenticate the records attached to his declaration for admission under HRE Rule 803(b)(6). 137 Hawai‘i at 211-213, 367 P.3d at 705-07.

We now address the questions presented on certiorari.

### III. Standard of Review

An award of summary judgment is reviewed de novo and "is appropriate where there is no genuine issue as to the material fact and the moving party is entitled to judgment as a matter of law." French v. Hawaii Pizza Hut, Inc., 105 Hawai‘i 462, 466, 99 P.3d 1046, 1050 (2004) (citing Ross v. Stouffer Hotel Co., 76 Hawai‘i 454, 457, 879 P.2d 1037, 1040 (1994)).

Furthermore,

> The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to

7

judgment as a matter of law. This burden has two components.

> First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.

> Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving part is entitled to summary judgment as a matter of law.

105 Hawaiʻi at 470, 99 P.3d at 1054 (emphasis and citation omitted).

## IV. Discussion

**A. Work's declaration was insufficient to establish that he is a "qualified witness" under <u>Fitzwater</u> as to U.S. Bank's records.**

Pursuant to HRCP Rule 56(e) (2000)[5] and Rules of the Circuit Courts of the State of Hawaiʻi ("RCCH") Rule 7(g) (1997)[6], a

---

[5] HRCP Rule 56 governs summary judgment. HRCP Rule 56(e) provides in pertinent part:

> **Form of affidavits; further testimony; defense required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

[6] RCCH Rule 7(g) provides in pertinent part:

(continued. . .)

declaration in support of a summary judgment motion must be based on personal knowledge, contain facts that would be admissible in evidence, and show that the declarant is competent to testify as to the matters contained within the declaration. The ICA ruled that the loan documents, including the note and allonge, were admissible through Work's declaration, which established he was a "qualified witness" able to authenticate the records of U.S. Bank and Ocwen pursuant to the hearsay exception for records of regularly conducted activity. See Mattos, 137 Hawai'i at 213, 367 P.3d at 707.

With respect to the note and mortgage documents, Work's declaration states:

> 1)  I am the Contract Management Coordinator of OCWEN Loan Servicing, LLC ("Ocwen"), the servicer for U.S. Bank N.A. in its capacity as Trustee for the registered holders of MASTR Asset Backed Securities Trust 2005-NC1, Mortgage Pass-Through Certificates, Series 2005-NC1 [("U.S. Bank")] of the mortgage loan at issue in this case (the "Loan"). As such, I am authorized to make this Declaration.
>
> 2)  I am over the age of 18 years, and I have personal knowledge of the facts and matters stated herein based on my review of the business records described below.  The statements set forth in this Declaration are true and correct, to the best of my knowledge and belief.
>
> 3)  In the regular performance of my job functions, I have access to and am familiar with [U.S. Bank's] records and documents relating to this case (the "Records"), including Ocwen's business records relating to the servicing of the

---

(continued. . .)
        **Declaration in lieu of affidavit**.  In lieu of an affidavit, an unsworn declaration may be made by a person, in writing, subscribed as true under penalty of law, and dated[.]

Loan (the "Ocwen Records"). In making this Declaration, I relied upon the Records.

4) The Ocwen Records document transactions relating to the Loan and were made and are maintained in the regular course of Ocwen's business consistent with Ocwen's regular practices, which require that records documenting transactions relating to the serviced mortgage loan be made at or near the time of the transactions documented by a person with knowledge of the transactions or from information transmitted by such a person.

5) According to the Ocwen Records, [U.S. Bank] is in possession of an original promissory note dated October 15, 2004 . . . in favor of NEW CENTURY MORTGAGE CORPORATION (the "Note"). A true and correct copy of the Note is attached hereto as Exhibit 1.

6) The Note has been endorsed to [U.S. Bank] by Ocwen acting as the attorney-in-fact for New Century Mortgage Corporation. A true and correct copy of the Limited Power of Attorney designating Ocwen as New Century's attorney-in-fact is attached hereto as Exhibit 2.[7]

7) According to the Ocwen Records, the Note is secured by a Mortgage dated October 15, 2004, and recorded on October 25, 2004 in the Bureau of Conveyances of the State of Hawaii,[8] as Document Number 3183517, and noted on the Transfer Certificate of Title No.: 671,440 (the "Mortgage"). A true and correct copy of the Mortgage is attached hereto as Exhibit 3.

8) According to the Ocwen Records, the Mortgage was assigned to [U.S. Bank] by that assignment dated January 3, 2007, and recorded on January 30, 2007, in the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Document Number 3550341, and that assignment dated September 29, 2010, and recorded October 11, 2010 in the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Document Number 4007870 (the "Assignments"). True and correct copies of the referenced assignments are attached hereto as Exhibit 4 and Exhibit 5. A true and correct copy of the Limited Power of Attorney is attached hereto as Exhibit 6.[9]

As to the alleged default, amounts owed, and notices provided,

Work's declaration is based on the "Ocwen Records."

---

[7]    This Limited Power of Attorney is dated March 2, 2005.

[8]    This appears to be a Land Court filing in the Office of Assistant Registrar.

[9]    This Limited Power of Attorney is dated April 13, 2012.

We focus on the ICA's ruling that the note and mortgage documents were admissible through Work's declaration as records of regularly conducted activity pursuant to HRE Rule 803(b)(6) and this court's Fitzwater opinion.  HRE Rule 803(b)(6) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> . . . .
> (b)  Other exceptions.
> . . . .
> (6)  Records of regularly conducted activity.  A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made in the course of a regularly conducted activity, at or near the time of the acts, events, conditions, opinions, or diagnoses, as shown by the testimony of the custodian or other qualified witness, or by certification that complies with rule 902(11) or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness.

(Emphasis added.)

Fitzwater addressed the admissibility of business documents authenticated by an employee of another business, stating:

> A person can be a 'qualified witness' who can authenticate a document as a record of regularly conducted activity under HRE Rule 803(b)(6) or its federal counterpart even if he or she is not an employee of the business that created the document, or has no direct, personal knowledge of how the document was created. As one leading commentator has noted:
>
> ... [sic] The phrase 'other qualified witness' is given a very broad interpretation.  The witness need only have enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business.  The witness need not have personal knowledge of the actual creation of the documents or have personally assembled the records.  In fact, the witness need not even be an employee of the record-keeping entity as long as the witness understands the entity's record-keeping system.
>
> There is no requirement that the records have been prepared by the entity that has custody of them, as long as they

11

> were created in the regular course of some entity's
> business.
>
> The sufficiency of the foundation evidence depends in part
> on the nature of the documents at issue. Documents that
> are 'standard records of the type regularly maintained by
> firms in a particular industry may require less by way of
> foundation testimony than less conventional documents
> proffered for admission as business records.'
>
> Thus, an employee of a business that receives records from
> another business can be a qualified witness who can
> establish a sufficient foundation for their admission as
> records of the receiving business under HRE Rule 803(b)(6).

Fitzwater, 122 Hawaiʻi at 365-66, 227 P.3d at 531-32 (internal

citations and footnote omitted).

Work's declaration does not assert that he is a custodian

of records for either U.S. Bank or Ocwen. Therefore, the

documents attached to his declaration are admissible under the

HRE 803(b)(6) hearsay exception only if he is a "qualified

witness" with respect to those documents. The ICA Opinion

relied on Fitzwater in concluding that Work met the requirements

of a "qualified witness" able to authenticate all the documents

to which he referred, and analyzed the issue as follows:

> As previously noted, Work's declaration stated that he is
> the Contract Management Coordinator for Ocwen. Work's
> declaration further stated that Ocwen is the servicer for U.S.
> Bank related to the Appellants' loan, and that he had access to
> and was familiar with Appellants' loan records through his
> regular performance of his job. Furthermore, Work's declaration
> indicated the documents to which he referred to in preparing his
> declaration were "maintained in the regular course of Ocwen's
> business consistent with Ocwen's regular practices, which require
> that records documenting transactions relating to the serviced
> mortgage loan be made at or near the time of the transactions
> documented by a person with knowledge of the transactions or from
> information transmitted by such a person." Thus, Work's
> declaration establishes that Ocwen relies on the documents
> related to Appellants' loan, there are further indicia of
> reliability given Ocwen's business practices, and the documents
> constituted "records of regularly conducted activity" that were

> admissible as a hearsay exception, pursuant to HRE Rule
> 803(b)(6).  The circuit court, therefore, did not err in relying
> upon the documents when it granted summary judgment in U.S.
> Bank's favor.

Mattos, 137 Hawaiʻi at 213, 367 P.3d at 707.

To the extent the ICA ruled that Work's declaration established him as a "qualified witness" with respect to Ocwen's records, we agree.  To the extent the ICA opinion concluded that Work met the requirements to be a "qualified witness" with respect to U.S. Bank's records, however, we disagree.  Fitzwater addresses situations in which one business receives documents created by another business and includes them in its own records.  Work's declaration does not indicate that U.S. Bank's Records were received by Ocwen and incorporated into the Ocwen Records.  Work's declaration also does not establish that Work is familiar with the record-keeping system of U.S. Bank.  Rather, Work merely states that he has access to and is familiar with U.S. Bank's records.  Thus Work's declaration does not satisfy foundational requirements to make him a "qualified witness" for U.S. Bank's records pursuant to Fitzwater.

Even if records attached to Work's declaration were otherwise admissible as Ocwen records, there are separate legal issues with respect to the note and allonge.  Defendants have continuously argued a lack of admissible evidence that U.S. Bank is the holder of the note.  On this issue, the ICA ruled that Work's declaration established U.S. Bank as the holder of the

note entitled to foreclose pursuant to HRS § 490:3-301 (2008).

Mattos, 137 Hawai'i at 212, 367 P.3d at 706.

In Reyes-Toledo, we held that a person seeking to judicially foreclose on a mortgage following a promissory note default must establish that it was the "person entitled to enforce [the note]" as defined by HRS § 490:3-301 at the time of the filing of the foreclosure complaint.  Reyes-Toledo, 139 Hawai'i at 370-71, 390 P.3d at 1257-58.  HRS § 490:3-301 provides:

> 'Person entitled to enforce' an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 490:3-309 or 490:3-418(d).  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

There was no evidence or argument presented in this case regarding HRS § 490:3-301 subsections (ii) and (iii), and the ICA ruled on the basis that U.S. Bank was the "holder" pursuant to subsection (i).  The relevant definition of "holder" is in HRS § 490:1-201(1) (2008).  This subsection defines a "holder" as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]"  Since the allonge was apparently used to specifically indorse the note to U.S. Bank, admissible evidence was needed to demonstrate that U.S. Bank was in

14

possession of the note and allonge at the time of the filing of this foreclosure complaint for U.S. Bank to be entitled to summary judgment.

Even if the Ocwen records were admissible through the Work declaration, the only representation in Work's declaration regarding possession of the note is in paragraph 5, which states, "According to the Ocwen records, [U.S. Bank] is in possession of an original promissory note dated October 15, 2004 . . . in favor of NEW CENTURY MORTGAGE CORPORATION[.]"  This paragraph goes on to say that "[a] true and correct copy of the Note is attached hereto as Exhibit 1."  (Emphasis added.) Work's declaration does not even represent that U.S. Bank's records contain the original note; Work merely states that Ocwen's records so indicate.  Even if Work's declaration had stated that the U.S. Bank records contain the original note, this statement would not be admissible because, as noted, Work's declaration is insufficient to render him a "qualified witness" as to U.S. Bank's records.

In addition, paragraph 5 of Work's declaration refers only to the original note and makes no reference to the allonge. Although Exhibit 1 also contains the allonge, which indorses the note to U.S. Bank, the allonge was never authenticated. Therefore, U.S. Bank was not entitled to summary judgment even

15

if the original note had been properly authenticated, which it was not.

Even if the aforementioned issues concerning the note and allonge did not exist, Work's declaration also does not satisfy the Reyes-Toledo requirement of an affirmative showing that U.S. Bank possessed the original note and allonge at the time of filing of this foreclosure complaint on July 21, 2011.

For all of these reasons, Work's declaration failed to meet U.S. Bank's burden of establishing facts necessary for a grant of summary judgment.

In order to provide guidance on remand, we address the other issues on certiorari.

**B.  Defendants' "robo-signing" allegation is unclear, so it is unnecessary to address the legal effect of "robo-signing." However, the first issue on certiorari has merit because there is a genuine issue of material fact as to whether Ocwen had authority to assign the mortgage from U.S. Bank's predecessor in interest to U.S. Bank.**

The ICA held that conclusory assertions of "robo-signing" are insufficient to establish a defense in a foreclosure action if the assertions lack factual allegations or a legal theory demonstrating how "robo-signing" caused harm to a mortgagee. Mattos, 137 Hawaiʻi at 210, 367 P.3d at 704. Defendants do not define what they mean by "robo-signing"; therefore, it is not necessary to address the legal effect of "robo-signing" at this

16

time.  Accordingly, we set aside the ICA's holding on this issue as it is not necessary to the determination of this case.

Underlying Defendants' "robo-signing" allegations, however, are assertions that the two mortgage assignments to the securitized trust culminating in the assignment to U.S. Bank were signed "by persons with insufficient authority or personal knowledge as to what they swore to, and whose signatures differed among similar mortgage assignments that they had supposedly signed and/or notarized."  Thus, Defendants assert that the assignments of mortgage were signed by persons (1) with insufficient authority; (2) with insufficient personal knowledge as to what they swore to; and (3) whose signatures differed among similar mortgage assignments that they had supposedly signed and/or notarized.  We address each of these allegations in turn.

We first address the allegation that the assignments of mortgage were signed by persons with insufficient authority. Exhibit 2 to Work's declaration, the March 2, 2005 Limited Power of Attorney designating Ocwen as New Century's attorney-in-fact, is admissible as an Ocwen record pursuant to Paragraph 6 of Work's declaration.  This Limited Power of Attorney establishes Ocwen's authority regarding the first mortgage assignment dated January 3, 2007 from Ocwen to U.S. Bank's predecessor in interest, "U.S. Bank, N.A., as Trustee for the registered

holders of MASTR Asset Back Securities Trust 2005-NC1, Mortgage Pass-Through Certificates, Series 2005-NC1" ("U.S. Bank for Registered Holders").[10]  Thus the first assignment of mortgage was signed by a person with sufficient authority.

Exhibit 6 to Work's declaration is an April 13, 2012 Limited Power of Attorney, which is also admissible as an Ocwen record.  This Limited Power of Attorney purports to establish Ocwen's authority to execute the second assignment of mortgage dated September 29, 2010 from U.S. Bank for Registered Holders to U.S. Bank.  Although the difference between U.S. Bank for Registered Holders to U.S. Bank is unclear, this foreclosure action was brought in the name of the assignee U.S. Bank, and this Limited Power of Authority was not effective until more than a year after the second assignment of mortgage.  Therefore, there is a genuine issue of material fact as to whether Ocwen had authority to sign the second assignment of mortgage to U.S. Bank.

We next address Defendants' allegation that the assignments of mortgage were signed by persons "with insufficient authority or personal knowledge as to what they swore[.]"  Defendants themselves lack personal knowledge as to the signers' knowledge. This allegation is therefore without merit.

---

[10]    It appears the only difference between the entities "U.S. Bank for Registered Holders" and "U.S. Bank" is that the latter's name includes the additional language "in its Capacity."

18

We then turn to Defendants' allegation that the assignments of mortgage contained signatures that differed among similar mortgage assignments supposedly signed and/or notarized by the same person.[11]  Even if the other assignments were admissible, there is no admissible evidence they were signed by different persons.  This allegation is therefore also without merit.

**C.    In a judicial foreclosure, a third party to a pooling and servicing agreement lacks standing to challenge assignments in alleged violation of its terms unless the violation would render the assignment void.**

Finally, in their second question on certiorari, Defendants challenge the foreclosure on the basis that the first and second assignments of the mortgage violated the requirements of the pooling and servicing agreement.  Paragraph 12 of the Giddings affidavit refers to the PSA as an exhibit filed with the Securities and Exchange Commission, and provides a website link. No explanation is provided as to how a document contained in a website link can be considered admissible evidence in this motion for summary judgment.  Thus, the terms of the PSA are not actually before us, and there is no actual evidence that the first and second assignments of mortgage violated terms within the PSA.

---

[11]    Defendants' allegations regarding mortgage assignments were based on the Giddings affidavit.  U.S. Bank challenged Giddings' interpretations of law, but never challenged whether she was qualified to testify as an expert, the scope of her alleged expertise, whether documents attached to declaration could properly be considered in the motion for summary judgment, or the admissibility of documents attached to her affidavit.

Even if the terms of the PSA were properly before this court and showed that the first and second assignments of mortgage violated its terms, Defendants might not have standing to challenge the validity of mortgage assignments on this basis. In Salvacion, a case arising out of a judicial foreclosure, the ICA noted that, "[t]ypically, borrowers do not have standing to challenge the validity of an assignment of its loans because they are not parties to the agreement and because noncompliance with a trust's governing document is irrelevant to the assignee's standing to foreclose." Salvacion, 134 Hawai'i at 175, 338 P.3d at 1190. As pointed out in Salvacion, this is the overwhelming majority rule. Id.[12] According to Salvacion, Hawai'i law would recognize an exception to the general rule when a challenge to a mortgage assignment would deem the assignment void, not voidable. Id. We adopt the ICA's analysis in Salvacion, but limit the holding to the judicial foreclosure context for the reasons that follow.

On certiorari, Defendants urge this court to follow the minority rule allowing third-party challenges to an assignment,

---

[12] The Giddings affidavit also asserts that the PSA is governed by New York law, which, according to Giddings, provides that every sale conveyance or other act of a trustee in contravention of a trust is void. Even if it was proper to consider the PSA under New York law, it is not clear whether a mortgage assignment in contravention of a pooling and servicing agreement would be deemed void or voidable. See Glaski v. Bank of Am., N.A., 218 Cal. App. 4th 1079, 1096–97, 160 Cal. Rptr. 3d 449, 463 (Cal. Ct. App. 2013) (construing New York law).

arguing that in <u>Yvanova v. New Century Mortg. Corp.</u>, 62 Cal. 4th 919, 365 P.3d 845 (2016), the Supreme Court of California allowed challenges to mortgage assignments based on non-compliance with terms of securitized trust agreements.  The Supreme Court of California was clear, however, that its ruling was limited to the nonjudicial foreclosure context; it held "only that a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment."  62 Cal. 4th at 924, 365 P.3d at 848.  We also note that the <u>Glaski</u> case, one of two cases cited in <u>Salvacion</u> as going against the majority rule, 134 Hawaiʻi at 176-77, 338 P.3d at 1190-91, also arose out of a non-judicial foreclosure. <u>Glaski</u>, 218 Cal. App. 4th at 1082, 160 Cal. Rptr. 3d at 452.  As the issue of whether such challenges should be allowed in non-judicial foreclosures is not before us, we limit our holding at this time to the judicial foreclosure context.

Accordingly, in the context of judicial foreclosures, we adopt the majority rule followed in <u>Salvacion</u> and hold that a third party unrelated to a pooling and servicing agreement lacks standing to challenge assignments based on alleged violation of the PSA's terms unless the violation would render the assignment void.  As the PSA is not in evidence, we do not decide whether

any of its terms were violated and, if so, whether any such violation renders an assignment void or voidable.

## V.    Conclusion

For the foregoing reasons, we vacate the ICA's March 9, 2016 Judgment on Appeal, as well as the circuit court's August 26, 2014 Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment and Decree of Foreclosure Against All Defendants on Complaint Filed July 21, 2011.  We remand this case to the circuit court for further proceedings consistent with this opinion.

| | |
|---|---|
| Gary Victor Dubin<br>for petitioners | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| J. Blaine Rogers<br>for respondent<br>U.S. Bank N.A. | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

