**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000017
25-JUL-2025
08:02 AM
Dkt. 51 SO**

NO. CAAP-23-0000017


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP. CSMC MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-6, Plaintiff-Appellee,
v.
BONNIE I. SWINK and JACK SWINK, Defendants-Appellants,
and
DEPARTMENT OF TAXATION, STATE OF HAWAIʻI, Defendant-Appellee,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10 and DOE GOVERNMENTAL UNITS 2-10, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 2CC141000702)


SUMMARY DISPOSITION ORDER
(By: Nakasone, Chief Judge, Leonard and Hiraoka, JJ.)

This is a second appeal arising out of a foreclosure decree and judgment, following a prior remand from this court.[1] We affirm.

---

[1]   U.S. Bank Nat'l Ass'n v. Swink, NO. CAAP-17-0000169, 2018 WL 2714851 (Haw. App. June 6, 2018) (SDO).

Defendants-Appellants Bonnie I. Swink and Jack Swink (collectively, the **Swinks**) appeal from the December 12, 2022 Judgment of the Circuit Court of the Second Circuit (**Circuit Court**),[2] entered in favor of Plaintiff-Appellee US Bank National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp. CSMC Mortgage-Backed Pass-Through Certificates, Series 2007-6 (**US Bank**).

The Swinks contend the Circuit Court erred:  **(1)** "in holding that the applicable date for determining whether US Bank and its predecessor had possession of the note was the date of the First Amended Complaint" (**Amended Complaint**) filed on September 8, 2021, "rather than the date the original Complaint was filed" on December 9, 2014; and **(2)** in granting summary judgment where US Bank did not prove, through admissible evidence of the prior loan servicer's records, that "the default letter of April 3, 2014 was sent to the Swinks."

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve the Swinks' points of error as follows.

US Bank filed a December 9, 2014 Complaint for foreclosure on a property (**Property**) secured by a promissory note (**Note**) and a mortgage executed by the Swinks, following the Swinks' default on the Note.  US Bank's 2017 summary judgment against the Swinks was vacated on appeal, for lack of admissible evidence establishing that US Bank possessed the Note at the time the Complaint was filed.

On remand, US Bank filed the Amended Complaint on September 8, 2021.  On September 14, 2022, US Bank filed a

---

2       The Honorable Kirstin M. Hamman presided.

2

motion for summary judgment on the Amended Complaint, which was granted. On December 12, 2022, the Circuit Court filed its "Findings of Fact, Conclusions of Law and Order Granting [US Bank]'s Motion for Summary Judgment Against All Defendants and for Interlocutory Decree of Foreclosure" (**MSJ Order**) and entered the Judgment, from which the Swinks timely appealed.

We review the grant of summary judgment de novo. U.S. Bank, N.A. v. Mattos, 140 Hawaiʻi 26, 30, 398 P.3d 615, 619 (2017). A foreclosing plaintiff must establish standing by showing it had the right to enforce the note when its complaint was filed. Bank of Am., N.A. v. Reyes-Toledo, 139 Hawaiʻi 361, 368, 390 P.3d 1248, 1255 (2017).

**(1)** The Swinks argue US Bank had to prove possession of the Note on the date the original Complaint was filed, relying on the "standing at inception" rule applied in other jurisdictions. The Swinks argue the Circuit Court's grant of summary judgment was erroneous because US Bank lacked standing.

US Bank points to this court's decision in Hanalei, BRC Inc. v. Porter, 7 Haw. App. 304, 760 P.2d 676 (App. 1988), which predates the 2017 Reyes-Toledo case, to argue that this precedent indicates that US Bank "should be permitted to establish standing as of the date it filed its Amended Complaint."

In Porter, the creditor plaintiff filed suit for nonpayment on a note, when it "did not have actual possession of the Note when the original complaint was filed on June 28, 1985." Id. at 309, 760 P.2d at 680. This court explained that in the amended complaint filed on February 11, 1987, the creditor plaintiff "alleged that it was a holder of the Note[,]" and appended evidence as such. Id. This court stated:

> [A]s a general rule, an action cannot be maintained if it is prematurely commenced before the accrual of the cause of action which is sought to be enforced. However, "the error or defect of premature commencement may be cured by filing an amended or supplemental complaint after the cause of action has accrued, unless the amended complaint states a different cause of action." 1A C.J.S *Actions* § 238 at 713 (1985). *See also Thompson v. Meyers*, 211 Kan. 26, 33, 505 P.2d 680, 686 (1973). Here, [p]laintiff cured the error of premature filing by filing its amended complaint on February 11, 1987, when [p]laintiff was in possession of the [n]ote and a holder thereof.

Id. at 310, 760 P.2d at 680 (brackets omitted).

The 2017 Reyes-Toledo opinion cited Porter as supporting authority, but noted in a footnote that:

> It is noted that the Porter case allowed for the curing of the premature commencement by the filing of an amended complaint after the plaintiff came into possession of the instrument. We note that this case does not present the issue of whether an amended complaint will cure the premature filing of a foreclosure action, and therefore we do not address this aspect of the Porter case.

Reyes-Toledo, 139 Hawaiʻi at 368 n.12, 390 P.3d at 1255 n.12.

This case presents the identical issue as Porter, because the Amended Complaint here, which stated the same foreclosure cause of action as the original Complaint, cured the error of the premature filing of the original Complaint. See Porter, 7 Haw. App. at 310, 760 P.2d at 680. "An amended complaint supersedes the original complaint and renders the original complaint of no legal effect." Jou v. Siu, No. CAAP-12-0000119, 2013 WL 1187559, at *2 (Haw. App. Mar. 22, 2013) (mem. op.) (citing Beneficial Haw., Inc. v. Casey, 98 Hawaiʻi 159, 167, 45 P.3d 359, 367 (2002)).

The Circuit Court's conclusion that US Bank "had possession of the original note, indorsed in blank, on 09/08/2021[,]" the date of the Amended Complaint, was correct. The Circuit Court did not err by granting summary judgment on

4

the grounds that US Bank had standing.  See Mattos, 140 Hawaiʻi at 30, 398 P.3d at 619.

**(2)** The Swinks argue that US Bank "is unable to prove that the default letter of April 3, 2014 was sent to the Swinks because that letter was sent by the prior loan servicer, Wells Fargo Home Mortgage" (**Wells Fargo**).  The Swinks contend the Wells Fargo records were inadmissible because the "trustworthiness" of the prior loan servicer's incorporated records was not established under Verhagen and Yata, which require that the testimony establishing the trustworthiness of the incorporated records to describe "pre-incorporation vetting" by the current servicer.  See U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Verhagen, 149 Hawaiʻi 315, 326, 489 P.3d 419, 430 (2021); Deutsche Bank Nat'l Tr. Co. as Tr. for Morgan Stanley ABS Capital I Inc. Tr. 2006-NC4 v. Yata, 152 Hawaiʻi 322, 334, 526 P.3d 299, 311 (2023).  The Swinks specifically challenge the declaration of Steven B. Ross, an officer or employee of US Bank's loan servicer, Specialized Loan Servicing LLC (**SLS**) (**Ross Declaration**) because the declaration "did not adequately explain that there was a due diligence review of the documents[.]"

We conclude the Ross Declaration contained sufficient information of "pre-incorporation vetting," establishing circumstances indicating the trustworthiness of the incorporated records from Wells Fargo.  See Verhagen 149 Hawaiʻi at 326, 489 P.3d at 430.  It stated in pertinent part:

> 12.  A portion of the business records for the loan in this matter were created by a prior servicer, the prior servicer's records for the loan were integrated and boarded into SLS's systems, such that the prior servicer's records concerning the loan are now part of SLS's business records. SLS maintains quality control and verification procedures as part of the boarding process to ensure the accuracy of the boarded records. . . .

5

13.     For loans that service transfer to SLS, the company utilizes a proprietary software system called the Pre-Boarding System ("PBS") to complete a comprehensive, examination of the loan data for accuracy and make any needed corrections prior to final boarding of the loan data into the System of Record ("LoanServ").  When SLS receives the loan data from the prior servicer for the loans that will be boarded, trained Data Analysts at SLS load the data into PBS for manual review and to conduct multi[-]step audits of the data.

14.     A key function of PBS is the tool called Edit Checks, which is an automated loan data audit program, which runs on the loan data multiple times through different accuracy checks and audit queries.  Edit Checks search the loan data for common violations of servicing business rules such as amortization errors, illogical condition exceptions, and conflicting or missing data and also validates the data when no errors or violations are discovered.  When errors and/or violations are discovered through Edit Checks, they are reviewed manually, and the necessary corrections are made to the loan data and the Edit Checks process is rerun until the tool no longer finds errors in the data.

15.     Upon completion of all audits and quality control on PBS, the loan data is pre-boarded to LoanServ without activating the loans to prevent usage before a final audit clearance.  This interim step allows SLS to determine and resolve any system and data errors that may only be discovered in final form in LoanServ prior to activation of the loans.  Once the loan data has cleared this pre-boarding audit process, then the final boarding of the loans occur and the loan data is activated in LoanServ.

(Emphases added.)  The Circuit Court did not err by admitting the default letter,[3] and the grant of summary judgment was not erroneous in this regard.  See Mattos, 140 Hawaiʻi at 30, 398 P.3d at 619.

---

[3]     The only item of evidence the Swinks present specific argument for, is the default letter sent by Wells Fargo.  To the extent the Swinks challenge the admission of all of the Wells Fargo records, their sole argument presented is that "the documents from the prior loan servicer, Wells Fargo Home Mortgage, should not have been admitted, and this includes, but is not limited to, the default letters purportedly send [sic] by Wells Fargo." (Emphasis added.)  The blanket "is not limited to" challenge to all of the Wells Fargo records is insufficient.  See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(7).

<u>**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**</u>

For the foregoing reasons, we affirm the December 12, 2022 MSJ Order and Judgment filed and entered by the Circuit Court of the Second Circuit.

DATED:  Honolulu, Hawaiʻi, July 25, 2025.

On the briefs:

Keith M. Kiuchi,
for Defendants-Appellants.

Charles R. Prather,
for Plaintiff-Appellee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge