**Electronically Filed
Supreme Court
SCWC-17-0000746
21-JUN-2021
09:00 AM
Dkt. 25 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

U.S. BANK TRUST, N.A.,
AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST,
Petitioner/Plaintiff-Appellee,

vs.

PATRICK LOWELL VERHAGEN; PATRICK LOWELL VERHAGEN, TRUSTEE OF THE
PATRICK LOWELL VERHAGEN REVOCABLE TRUST DATED OCTOBER 29, 1999
Respondent/Defendant-Appellant,

and

WELLS FARGO BANK, N.A.,
Respondent/Defendant-Appellee.

SCWC-17-0000746

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000746; CIVIL NO. 16-1-0147(1))

JUNE 21, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY EDDINS, J.

This case concerns the admissibility and evidentiary weight

of documents and declarations at issue in a foreclosure

proceeding.  We consider: whether promissory notes are hearsay, admissible only if they fall within an exception to the hearsay rule; whether a copy of a promissory note is self-authenticating under Hawai'i Rules of Evidence ("HRE") Rule 902(9); the scope and limits of the business records exception to the hearsay rule; and the evidentiary burden mortgagees must meet to establish standing in the foreclosure context.

We conclude that promissory notes are not hearsay, that copies of promissory notes are not self-authenticating under HRE Rule 902(9), and that, under the incorporated records doctrine, business records may, in certain circumstances, be admissible even absent testimony concerning the business practices or records of their creator.  We also clarify the evidentiary burden on mortgagees seeking to show their possession of a promissory note at the time a foreclosure complaint was filed.

## I.    BACKGROUND

Patrick Verhagen ("Verhagen") owned real estate in Lahaina (the "Property").  In September 2007, Verhagen executed a $1,730,000.00 note (the "Note") in favor of Washington Mutual Bank, FA ("Washington Mutual").  Verhagen secured the Note with a mortgage on the Property.

The mortgage was later assigned to U.S. Bank.  Caliber Home Loans, Inc. ("Caliber") is U.S. Bank's current loan servicer. JPMorgan Chase Bank, National Association ("JPMorgan Chase")

previously serviced the loan.

Verhagen defaulted on the Note in February 2012. He was sent notice of the default in August 2014. The notice provided Verhagen thirty-five days to cure the default. Verhagen did not timely cure the default.

On March 23, 2016, U.S. Bank filed a verified foreclosure complaint in the Circuit Court of the Second Circuit (the "circuit court").

The complaint was accompanied by a Verification to Foreclosure Complaint by Julia Jackson, a Caliber employee. Jackson said she was familiar with Caliber's records and the manner in which Caliber maintains those records. She "verified" and "confirmed" U.S. Bank's possession of the original Note.

On January 31, 2017, U.S. Bank filed a Motion for Summary Judgment and Interlocutory Decree of Foreclosure ("MSJ") against Verhagen.

In its MSJ, U.S. Bank argued it was entitled to summary judgment against Verhagen because: (1) A loan had been made to Verhagen; (2) Verhagen made, executed, and delivered the Note to the lender; (3) Verhagen secured the Note with a mortgage on the Property; (4) Verhagen is in default of the amounts due under the Note; and (5) U.S. Bank. holds the Note and has standing to foreclose against Verhagen.

U.S. Bank supported its MSJ with a declaration (the

"Salyers Declaration") from Alyssa Salyers.  Salyers is a foreclosure document specialist at Caliber.

Salyers declared she was familiar with both Caliber's business records concerning the Note and the manner in which Caliber maintains those records.  Salyers also declared she had inspected a copy of the Note maintained by Caliber.  She attached a "true and correct" copy of the Note to her declaration.  She further declared that Caliber's records concerning the Note include records incorporated from the prior loan servicer, JPMorgan Chase.  The records obtained from JPMorgan Chase, Salyers declared, are "kept and maintained by Caliber in the ordinary course of its business for the purpose of maintaining an accounting of payments received, expenses incurred, and amounts advanced with regard to the Subject Loan, and such records are relied upon by Caliber in the regular course of its business."

Verhagen's opposition to U.S. Bank's MSJ focused on U.S. Bank's failure to demonstrate its ownership and possession of the Note at the time it filed suit.  Verhagen argued that this evidentiary deficiency was fatal for U.S. Bank: without a showing that it possessed the Note at the time it filed its complaint, U.S. Bank could not establish standing under Bank of America, N.A. v. Reyes-Toledo, 139 Hawai'i 361, 390 P.3d 1248 (2017).

4

We issued Reyes-Toledo on February 28, 2017: one month before Verhagen's March 31, 2017 opposition and one month after U.S. Bank's January 31, 2017 MSJ.  Reyes-Toledo held that in order to establish standing, a foreclosing plaintiff must prove "its entitlement to enforce the note at the commencement of the proceedings."  Id. at 369, 390 P.3d at 1256.

The circuit court granted U.S. Bank's motion.  Verhagen appealed.  The ICA remanded the case to the circuit court to allow U.S. Bank to supplement the record in light of Reyes-Toledo and another case, U.S. Bank N.A. v. Mattos, 140 Hawai'i 26, 398 P.3d 615 (2017).[1]  Mattos was issued after U.S. Bank submitted its proposed forms for the foreclosure judgment (May 17, 2017) but before the court entered judgment (September 25, 2017).  In Mattos, we held that the employee of a plaintiff

---

[1]    U.S. Bank's motion for remand came after it had, following a procedure described in Life of the Land v. Ariyoshi, 57 Haw. 249, 553 P.2d 464 (1976), asked the circuit court to indicate how it was inclined to rule on a motion to ratify the foreclosure judgment.  Verhagen neither opposed the substance of the motion U.S. Bank presented to the circuit court nor appeared at the related hearing.  Verhagen did, however, file jurisdictional objections to U.S. Bank's proposed order granting the motion to ratify.

Notwithstanding Verhagen's jurisdictional objections, on July 27, 2018, the circuit court indicated its inclination to grant U.S. Bank's motion to ratify.  Confusingly, though it lacked jurisdiction to adjudicate the motion, the circuit court styled itself as "granting" the motion to ratify.  As the ICA noted in its order granting U.S. Bank's motion for temporary remand, the circuit court should have indicated its inclination to grant the motion rather than purporting to actually grant it.  See Life of the Land, 57 Haw. at 251, 553 P.2d at 466 ("Accordingly, we consider that the procedure for motions under Rule 60(b), H.R.C.P., may and should be consistent with that for motions under Rule 33, H.R.Cr.P., where an appeal is pending in this court.  Jurisdiction is in this court while the appeal is pending, in both instances.  Nevertheless, the motion may be made and considered in the circuit court.  If that court indicates that it will grant the motion, the appellant may then move in this court for a remand of the case.")

bank's loan servicer was not a "qualified witness" in relation to the bank's records where the employee did not testify to familiarity with the bank's record-keeping system or to the loan servicer's incorporation of the bank's records.  Id. at 33, 398 P.3d at 622.

On remand, U.S. Bank moved for ratification of the circuit court's prior judgment.  Verhagen filed jurisdictional objections to the circuit court's consideration of the motion but did not substantively oppose the motion to ratify.  U.S. Bank's motion was accompanied by a supplemental declaration from Melinda Patterson (the "Patterson Declaration").  Patterson stated she was a Caliber employee and was familiar with both Caliber's books and records concerning the Note and the manner in which Caliber maintains its books and records.  Patterson's declaration provided additional testimony concerning Caliber's incorporation of prior loan servicers' records.  Patterson declared:

> Caliber's records include and incorporate records for the Loan obtained from [JPMorgan Chase] ("Prior Servicer"), the prior loan servicer for the Loan.  The records obtained by Caliber from the Prior Servicer are kept and maintained by Caliber in the ordinary course of its business for the purpose of maintaining an accounting of payments received, expenses incurred, and amounts advanced with regard to the Loan, and such records are relied upon by Caliber in the regular course of its business.  The information regarding the Loan transferred to Caliber from the Prior Servicer has been validated in many ways, including but not limited to, going through a due diligence phase, review of hard copy documents, and review of the payment history and accounting of other fees, costs, and expenses charged to the Loan by Prior Servicer.  It is Caliber's regular practice, after these phases are complete, to receive records from prior

6

> servicers and integrate these records into Caliber's business records at the time of acquisition. Once integrated, Caliber maintains and relies on these business records in the ordinary course of its mortgage loan servicing business.

Patterson also declared that, based on her review of Caliber's business records, U.S. Bank possessed the Note on March 23, 2016, when it filed its complaint against Verhagen:

> Plaintiff, or its agent on Plaintiff's behalf, was in possession of the original wet-ink, indorsed in blank Note when the above-captioned foreclosure action was commenced on March 23, 2016 and since [that time]. . . .

> My personal knowledge of these statements is derived from my having inspected Caliber's business records. Specifically, I researched Caliber's business records, which includes "Certification" [sic] executed by Caliber employee, Jennifer Martin. The "Certification" contained in Caliber's business records evidence [sic] that the original wet ink, indorsed in blank Note was in Caliber's possession on Plaintiff's behalf on February 9, 2016. Further, the "Certification" contained in Caliber's business records indicates that the original wet-ink Note was indorsed in blank no later than February 9, 2016, as the original wet-ink Note was electronically scanned and uploaded to Caliber's business records on or before February 9, 2016 and the scanned copy of the original wet-ink Note that was uploaded to Caliber's business records on or before February 9, 2016 contains a blank indorsement on page 6 of the Note.

Patterson attached a copy of Jennifer Martin's Certification to her declaration.

Patterson also declared that there was an attorney's bailee letter agreement in Caliber's business records. The letter was dated December 9, 2016. Patterson declared that Caliber sent the letter[2] to U.S. Bank's legal counsel on or around that date

---

[2] The bailee letter attached to Patterson's declaration documented transmission of the original Note from Caliber to U.S. Bank's foreclosure counsel. At the bottom of the letter there was a signed December 16, 2016 acknowledgement from a representative of U.S. Bank's legal counsel recognizing receipt of the original Note.

7

along with the wet-ink indorsed-in-blank Note. Verhagen did not object to the admission of Patterson's testimony.

On October 8, 2018, the circuit court filed amended findings of fact ("FOFs") and conclusions of law ("COLs"). These amended FOFs and COLs addressed U.S. Bank's compliance with Reyes-Toledo. The circuit court found U.S. Bank possessed the indorsed-in-blank Note at the time it sued Verhagen:

> [Amended FOF 8] At the time the Complaint was filed, PLAINTIFF, or its agent on PLAINTIFF's behalf, was in possession of the original indorsed in blank Note. As evidence of this, the Verification filed with the Complaint, which was executed by Julia Jackson (an employee of Caliber Home Loans, Inc.) ("Servicer"), PLAINTIFF'S loan servicer, stated that Jackson had "verified and hereby confirm[ed] possession of the original Note by Plaintiff . . . [and that] [t]he Note is indorsed in blank . . . ." Verification to Complaint, at ¶¶ 7-8; see Nationstar Mortgage, LLC v. Ruth C. Alejandro, et al., CAAP 15-0000107 (March 23, 2017) (Summary Disposition Order) (discussing how similar verification established possession of note when case was commenced as required by Reyes-Toledo). Further, together with the Motion to Ratify, filed on June 18, 2018, PLAINTIFF submitted a further Declaration of Melinda Patterson (who was also an employee of Servicer), which provided additional evidence that: (i) Servicer had authority to act on behalf of PLAINTIFF and had been servicing the subject loan since prior to the filing of the Complaint (see Patterson Decl. at ¶¶ 3 and 6); and (ii) Servicer had been in possession of the original indorsed in blank Note since at least February 9, 2016, and through approximately December 9, 2016, when the original indorsed in blank Note was transmitted to PLAINTIFF'S counsel of record in this case to hold on PLAINTIFF'S behalf while the foreclosure action was being prosecuted (see Patterson Decl. at ¶ 8; Prather Declaration submitted with PLAINTIFF'S Reply Memorandum in Support of its Motion for Summary Judgment, filed April 3, 2016).

The circuit court further found that U.S. Bank had possessed the Note since the filing of the complaint:

> [Amended FOF 11] As a result, PLAINTIFF, its agent on PLAINTIFF's behalf, or PLAINTIFF'S counsel on PLAINTIFF'S behalf, has been and remains in possession of the original indorsed in blank Note since before this foreclosure action

was commenced on March 23, 2016, and through the present. No evidence to the contrary was presented to the Court.

The circuit court's amended FOFs also considered the admissibility of the loan documents U.S. Bank submitted in support of its MSJ:

> [Amended FOF 10]  Further, the evidence establishing PLAINTIFF'S standing is admissible because the various declarants established their personal knowledge of the statements made and/or that the statements made were derived from the business records of the declarant's employer, and not some other entity.  See U.S. Bank, N.A. v. Mattos, 140 Haw. 26, 32-33, 398 P.3d 615, 621-622 (S. Ct. 2017) (foreclosing plaintiff must establish standing through admissible evidence; servicer could not testify to records of plaintiff without establishing familiarity with plaintiff's record keeping system) . . . .

The circuit court also addressed U.S. Bank's standing:

> [Amended COL 2]  PLAINTIFF had standing to bring this action and has standing at present because PLAINTIFF, its agent on PLAINTIFF'S behalf, or PLAINTIFF'S counsel on PLAINTIFF'S behalf, has been and remains in possession of the original indorsed in blank Note since before this foreclosure action was commenced on March 23, 2016, and through the present.

Following the entry of the circuit court's amended judgment, order, and FOFs and COLs, U.S. Bank filed an amended answering brief in the ICA.  In its brief, U.S. Bank argued that: (1) loan documents maintained by Caliber but created by prior loan servicers were admissible as "incorporated records" under the business records exception to the hearsay rule; and (2) declarations U.S. Bank submitted in support of its MSJ showed it possessed the Note at the time it filed the complaint and, in doing so, established U.S. Bank's standing to sue Verhagen.

On October 2, 2020, the ICA issued an Amended SDO[3] vacating the circuit court's October 8, 2018, Amended Judgment and the Amended Findings of Fact and Conclusions of Law; Amended Order Granting Plaintiff's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure. U.S. Bank v. Verhagen, CAAP-17-0000746 (App. Oct. 2, 2020) (SDO).

The ICA ruled that U.S. Bank lacked standing because it had not established it possessed the Note at the time it filed the foreclosure action. See Reyes-Toledo, 139 Hawai'i at 368, 390 P.3d at 1255 (holding that to establish standing a foreclosing plaintiff must establish entitlement to enforce the subject note at the time the action was commenced).

The ICA reached this conclusion after determining that the copies of the Note U.S. Bank submitted in support of its MSJ

---

[3] The ICA initially issued a summary disposition order (the "SDO") vacating the circuit court's September 25, 2017 Judgment and Findings of Fact and Conclusions of Law; Order Granting Plaintiff's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure Filed January 31, 2017. U.S. Bank moved the ICA to reconsider its SDO. In addition to making several legal arguments about why the ICA should reconsider the SDO, U.S. Bank's motion for reconsideration highlighted the fact that the ICA's SDO did not address or acknowledge the circuit court's October 8, 2020 Amended Judgment and Amended Findings of Fact and Conclusions of Law; Order Granting Plaintiff's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure Filed January 31, 2017. On October 2, 2020, the ICA issued a two-paragraph order granting in part U.S. Bank's motion for reconsideration. The order granted the motion only to the extent it concerned the ICA's failure to address the October 8, 2018 Amended Judgment and the Amended Findings of Fact and Conclusions of Law; Amended Order Granting Plaintiff's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure. The ICA rejected all of U.S. Bank's substantive legal arguments concerning the need for reconsideration. It issued its Amended SDO that same day, October 2, 2020.

were inadmissible hearsay.  None of the declarations U.S. Bank submitted were from a declarant familiar with the record-keeping practices of Washington Mutual, the entity that purportedly created the Note.  As such, the ICA ruled, there was not an adequate foundation for the admission of the Note under the "business records" exception to the hearsay rule.

In reaching this conclusion, the ICA cited Mattos's quotation of State v. Fitzwater, 122 Hawaiʻi 354, 227 P.3d 520 (2010), for the proposition that an employee of a business that received records from another business may be qualified to establish a foundation for their admission under HRE Rule 803(b)(6):

> A person can be a "qualified witness" who can authenticate a document as a record of regularly conducted activity under HRE Rule 803(b)(6) or its federal counterpart even if he or she is not an employee of the business that created the document, or has no direct, personal knowledge of how the document was created. As one leading commentator has noted:
>
>> The phrase "other qualified witness" is given a very broad interpretation.  The witness need only have enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business.  The witness need not have personal knowledge of the actual creation of the documents or have personally assembled the records.  In fact, the witness need not even be an employee of the record-keeping entity as long as the witness understands the entity's record-keeping system.
>>
>> There is no requirement that the records have been prepared by the entity that has custody of them, as long as they were created in the regular course of some entity's business.
>>
>> The sufficiency of the foundation evidence depends in part on the nature of the documents

> at issue. Documents that are "standard records of the type regularly maintained by firms in a particular industry may require less by way of foundation testimony than less conventional documents proffered for admission as business records."

Verhagen, SDO at 7-8 (quoting Mattos, 140 Hawai'i at 32, 398 P.3d at 621) (cleaned up).

The ICA also cited Behrendt's discussion of the testimony necessary to support the admission of incorporated records:

> The court in Mattos held that a witness may be qualified to provide the testimony required by HRE Rule 803(b)(6) even if the witness is not employed by the business that created the document or lacks direct, personal knowledge of how the document was created. Id. "There is no requirement that the records have been prepared by the entity that has custody of them, as long as they were created in the regular course of some entity's business." Id. (quoting State v. Fitzwater, 122 Hawai'i 354, 366, 227 P.3d 520, 532 (2010)). The witness, however, must have enough familiarity with the record-keeping system of the business that created the record to explain how the record was generated in the ordinary course of business. Id.
>
> Records received from another business and incorporated into the receiving business' records may in some circumstances be regarded as "created" by the receiving business. Id. Incorporated records are admissible under HRE Rule 803(b)(6) when a custodian or qualified witness testifies that the documents were incorporated and kept in the normal course of business, that the incorporating business typically relies upon the accuracy of the contents of the documents, and the circumstances otherwise indicate the trustworthiness of the document. See id.; Fitzwater, 122 Hawai'i at 367-68, 227 P.3d at 533-34.

Verhagen, SDO at 8 (quoting 142 Hawai'i at 45-46, 414 P.3d at 97-98).

The ICA then turned to explaining why the Jackson verification, Salyers declaration, and supplemental Patterson declaration each failed to establish the declarant's qualifications to authenticate the Note as a business record

12

under HRE Rule 803(b)(6).

Jackson's verification — which described her familiarity with Caliber's records and record-keeping system[4] — did not qualify her as an "other qualified witness" for purposes of admitting the Note under HRE Rule 803(b)(6) because it did not demonstrate that she had "enough familiarity with the record-keeping system of the business that created [the Note] to explain how [it] was generated in the ordinary course of business." Verhagen, SDO at 9 (alterations added) (quoting Behrendt, 142 Hawai'i at 45, 414 P.3d at 97).

Salyers' declaration[5] was similarly deficient. Because

---

[4] Specifically, Jackson stated:

> I have access to and am familiar with Caliber's books and records regarding the Loan, including Caliber's servicing records and copies of the applicable loan documents. I am familiar with the manner in which Caliber maintains its books and records, including computer records relating to the servicing of the Loan. Caliber's records are made at or near the time of the occurrence of the matters set forth in such records, by an employee or representative with knowledge of the acts or events recorded. Such records are obtained, kept and maintained by Caliber in the regular course of Caliber's business. Caliber relies on such records in the ordinary course of its business.

[5] Salyers declared, in relevant part:

> I have access to and am familiar with Caliber's books and records regarding the Loan, including Caliber's servicing records and copies of the applicable loan documents. I am familiar with the manner in which Caliber maintains its books and records, including computer records relating to the servicing of the Loan. Caliber's records are made at or near the time of the occurrence of the matters set forth in such records, by an employee or representative with knowledge of the acts or events recorded. Such records are obtained, kept and maintained by Caliber in the regular course of Caliber's business. Caliber relies on such records in the ordinary course of its business. Caliber's

13

Salyers did not attest to being familiar with "the record-keeping system of Washington Mutual or JPMorgan [Chase]" Salyers was not a "qualified witness" for the admission of the Note under HRE Rule 803(b)(6).

According to the ICA, even the supplemental Patterson declaration failed "to establish under Mattos and Behrendt that [Patterson] is a custodian of records or a qualified witness for purposes of admitting the Note as evidence pursuant to HRE Rule 803(b)(6)." Verhagen, SDO at 10.

In its December 28, 2020 certiorari application, U.S. Bank presented the following questions:

(1) "To obtain summary judgment, is a foreclosing creditor in possession of the original note required to authenticate the note through HRE 803(b)(6), or is the note admissible under HRE 902?";

(2) "Is the issue of standing based on possession of the promissory note distinct from the issue of admissibility of loan records, such that a lender can satisfy the possession requirement with a declaration that affirms pre-filing

---

records include and incorporate records for the Subject Loan obtained from JPMorgan Chase Bank, N.A. ("Prior Servicer"), the prior loan servicer for the Subject Loan. The records obtained by Caliber from the Prior Servicer are kept and maintained by Caliber in the ordinary course of its business for the purpose of maintaining an accounting of payments received, expenses incurred, and amounts advanced with regard to the Subject Loan, and such records are relied upon by Caliber in the regular course of its business.

possession of the note based upon personal knowledge and corroborating records of the custodian, irrespective of the declarant's foundation to admit the note as a business record under HRE 803(b)(6)?"; and

(3) "Did the debtor waive his right to dispute the Amended Judgment by failing to oppose Petitioner's Motion to Ratify and the resulting Amended Order?"

## II. DISCUSSION

### A. The Note is not hearsay

The Note is not hearsay.

Out of court statements with independent legal significance, like verbal acts, are not hearsay since "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted." Fed. R. Evid. 802(c) cmt. See State v. Villena, 140 Hawai'i 370, 378, 400 P.3d 571, 579 (2017) ("It is well-settled that statements of independent legal significance are not hearsay.").

Contractual documents have independent legal significance. See State v. Salavea, 147 Hawai'i 564, 577 n.13, 465 P.3d 1011, 1024 n.13 (2020) (citing Island Directory Co. v. Iva's Kinimaka Enters., Inc., 10 Haw. App. 15, 21-22, 859 P.2d 935, 939 (1993), and describing it as "holding that statements that constitute the offer, acceptance, or terms of a contract are not hearsay

15

because the making of such statements are in themselves relevant[.]").

Promissory notes are a subspecies of written contracts because they record the terms of an agreement between lender and borrower. See Remington Investments, Inc. v. Hamedani, 64 Cal. Rptr. 2d 376, 382 (Cal. Ct. App. 1997) (explaining "[t]he Promissory Note document itself is not a business record as that term is used in the law of hearsay, but rather is an operative contractual document admissible merely upon adequate evidence of authenticity"). Since the Note has independent legal significance as evidence of the written contract between Verhagen and the Note's holder, it is not hearsay. Because the Note is not hearsay, it does not need to meet the business records exception to be admissible.

**B. Copies of the Note submitted by U.S. Bank are not self-authenticating under HRE Rule 902(9)**

Though the *original* Note is self-authenticating under HRE Rule 902(9), the *copies* of the Note U.S. Bank submitted in support of its MSJ are not.

Even non-hearsay evidence must be authenticated. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." HRE Rule 901. Under HRE Rule 902, however,

16

"[e]xtrinsic evidence of authenticity as a condition precedent to admissibility" is not needed with respect to "[c]ommercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law."  HRE Rule 902(9).

Hawai'i's generally applicable commercial law is the Hawai'i Uniform Commercial Code (the "U.C.C.").  Under Article 3 of the U.C.C.:

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings.  If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed[6] to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.

Hawai'i Revised Statutes ("HRS") § 490:3-308(a) (2008).  Promissory notes like the one Verhagen signed are negotiable instruments under the U.C.C.  See HRS § 490:3-104; see also Bank of New York Mellon v. Spielman, 146 Hawai'i 205, 457 P.3d 844 (App. 2020) (characterizing a promissory note as a "negotiable instrument" under Article 3 of Hawai'i's U.C.C.).  As such, the original Note is self-authenticating commercial paper under HRE Rule 902(9).

HRE 902(9) does not specify whether it applies to

---

6       Article 3 of the U.C.C. provides that, "[w]henever this chapter creates a 'presumption' with respect to a fact, or provides that a fact is 'presumed', the trier of fact shall find the existence of the fact unless evidence is introduced that supports a finding of its nonexistence."  HRS § 490:1-206.

photocopies of commercial paper or *only* to original commercial paper. At least one court has found that photocopies of commercial paper are not self-authenticating. See United States v. Brandell, 35 M.J. 369, 371 (C.M.A. 1992) (holding that photocopies of checks are not "self-authenticating 'commercial paper' within the meaning of Mil.R.Evid. Rule 902(9)," which is identical to HRE Rule 902(9)). We, however, have not addressed whether photocopies of commercial paper are self-authenticating under HRE Rule 902(9).

HRE Rule 1003 is central to our analysis on this issue. It provides: "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." HRE Rule 1003.

Here, and indeed in all foreclosure cases where a mortgagee introduces a copy of a promissory note to establish standing, we conclude that it would be unfair to treat duplicates of promissory notes as self-authenticating under HRE Rule 902(9).

The policy considerations that justify HRE Rule 902(9)'s special treatment of commercial paper do not apply in the context of duplicate promissory notes. An original note is particularly trustworthy because it allows for the direct inspection of all its inscriptions. But it is impossible to

18

definitively match a copy of a given note's frontside with a copy of the same note's backside.[7]  Moreover, limiting HRE Rule 902(9) to original commercial papers makes sense given the mismatch between the significance of original commercial paper and copies thereof in everyday life: "[b]anks do not treat copies of checks and notes like originals," and under the U.C.C., the "enforcement of a negotiable instrument by a person who does not possess the original instrument [is permitted] only under very limited circumstances."  31 Charles Alan Wright, Arthur R. Miller & Victor J. Gold, Federal Practice and Procedure § 7143(9) (1st ed. 2000 & Supp. 2021).

Accordingly, we hold that while original promissory notes are self-authenticating under HRE Rule 902(9), duplicates like those submitted by U.S. Bank in support of its MSJ are not self-authenticating and are only admissible if they are authenticated by extrinsic evidence.  See HRE Rule 901.

---

[7] As one treatise explained:

> [A] copy may not reveal all the information bearing on authenticity that is contained on an original.  For example, a check that has been deposited and processed through the banking system has information that is contained on both its front and back.  While both the front and back can be copied, often there is nothing about a copy of a given front and a given back that shows they match. Further, the bank imprints on the back of a check may not be clear on a copy.

31 Charles Alan Wright, Arthur R. Miller & Victor J. Gold, Federal Practice and Procedure § 7143(9) (1st ed. 2000 & Supp. 2021).

**C.    U.S. Bank properly authenticated the copies of the Note it submitted in support of its MSJ**

The copies of the Note U.S. Bank submitted in support of its MSJ are not self-authenticating commercial paper.  They are still admissible, however, if there is "evidence sufficient to support a finding" that they are what U.S. Bank claims they are.  See HRE Rule 901(a).  Testimony of a witness with personal knowledge of a document may establish the foundation necessary for its admission.  HRE Rule 901(b)(1).

Salyers and Patterson's testimony establishes an adequate foundation for the copies' admission.  Both Salyers and Patterson declared under penalty of perjury that they had inspected a copy of the Note maintained by Caliber.  They both declared that "true and correct" copies of the Note they inspected were attached to their declarations.  U.S. Bank has thus adequately authenticated these copies of the Note.

**D.    The ICA erred in its application of the incorporated records doctrine**

In its Amended SDO, the ICA held that the Note was inadmissible because it was not authenticated by testimony from a witness with personal knowledge of the record-keeping systems of Washington Mutual or JPMorgan Chase.  Leaving aside the fact that the Note is not hearsay, the ICA's holding relies on a conspicuous misreading of our incorporated records doctrine.

Though hearsay is generally inadmissible, HRE Rule

20

803(b)(6) establishes a hearsay exception for "records of regularly conducted activity."  It provides:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made in the course of a regularly conducted activity, at or near the time of the acts, events, conditions, opinions, or diagnoses, as shown by the testimony of the custodian or other qualified witness, or by certification that complies with rule 902(11) or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness.

HRE Rule 803(b)(6).

Our incorporated records doctrine clarifies the application of this exception to documents that were created by one entity but which are maintained in the records of another.  We introduced this rule in Fitzwater, 122 Hawai'i 354, 227 P.3d 520.  In Fitzwater, we explained: "when an entity incorporates records prepared by another entity into its own records, they are admissible as business records of the incorporating entity provided that it relies on the records, there are other indicia of reliability, and the requirements of HRE Rule 803(b)(6) are otherwise satisfied."  Id. at 367–68, 227 P.3d at 533–34 (emphasis added).

We affirmed this holding in Behrendt, explaining that "[r]ecords received from another business and incorporated into the receiving business' records may in some circumstances be regarded as 'created' by the receiving business."  142 Hawai'i at 45, 414 P.3d at 97.  The clear implication of this language is

21

that when a record is treated as "created" by the receiving business, a person is qualified to authenticate it if the person has "enough familiarity with the record-keeping system of the business that 'created' the record," i.e., the receiving or incorporating business.  Accordingly, a person may be qualified to authenticate an incorporated record even if the person lacks familiarity with the records or record-keeping practices of the entity that <u>actually</u> created the record.

In <u>Behrendt</u>, we identified the circumstances in which it is appropriate to treat an incorporated record as "created" by the receiving business:

> Incorporated records are admissible under HRE Rule 803(b)(6) when a custodian or qualified witness testifies that [1] the documents were incorporated and kept in the normal course of business, [2] that the incorporating business typically relies upon the accuracy of the contents of the documents, and [3] the circumstances otherwise indicate the trustworthiness of the document.

142 Hawai'i at 45, 414 P.3d at 97.  If each of these three conditions is satisfied, an incorporated record is admissible even in the absence of testimony concerning its *actual* creation. This is because evidence that a business has incorporated and relied on a record created by another organization speaks directly to that record's reliability.  When accompanied by testimony about *other* circumstances that also indicate the record's trustworthiness, such evidence is an acceptable substitute for testimony concerning a record's actual creation.

Immediately before our discussion of the incorporated records doctrine in Behrendt, we addressed a slightly different situation: the case where a business has custody of another entity's records but has not actually incorporated those records into its own. In that situation, we explained, a witness need not be employed by the entity that created the documents to provide the testimony required by HRE Rule 803(b)(6). But the witness does need to have "enough familiarity with the record-keeping system of the business that created the record to explain how the record was generated in the ordinary course of business." Id. at 45, 414 P.3d at 97.

In its SDO, the ICA incorrectly applied this standard to Caliber's incorporated records. It ignored the fact that the records created by JPMorgan Chase were incorporated into Caliber's own records and were not merely in Caliber's custody. In determining whether the records incorporated from JPMorgan Chase were admissible under HRE Rule 803(b)(6), the ICA should have considered whether there was testimony from a Caliber custodian or witness qualified to testify about Caliber's records that: (1) Caliber incorporated and kept the documents in the normal course of business; (2) Caliber typically relies upon the accuracy of the contents of the documents; and (3) the circumstances otherwise indicate the trustworthiness of the documents. See id. at 45, 414 P.3d at 97.

23

Patterson and Salyers[8] both testified that JPMorgan Chase's records were incorporated into Caliber's own and kept and maintained by Caliber in the ordinary course of its business. They both further testified that Caliber used and relied on the incorporated records in the regular course of its loan servicing business. The first two requirements for the admission of incorporated records are thus satisfied.

Salyers' testimony does not describe any circumstances that otherwise indicate the trustworthiness of the documents Caliber incorporated from JPMorgan Chase. But Patterson's does. Patterson declared that:

> The information regarding the Loan transferred to Caliber from the Prior Servicer has been validated in many ways, including, but not limited to, going through a due diligence phase, review of hard copy documents, and review of the payment history and accounting of other fees, costs, and expenses charged to the Loan by Prior Servicer.

Though scant, this testimony establishes circumstances indicating the trustworthiness of Caliber's incorporated records. It is evidence that before incorporating JPMorgan Chase's documents, Caliber reviewed hard copies of the

---

[8] Both Patterson and Salyers are knowledgeable about Caliber's record keeping system and can describe Caliber's incorporation of JPMorgan Chase's documents. They are thus "other qualified witnesses" who can authenticate Caliber's records of regularly conducted activity under HRE Rule 803(b)(6). See Fitzwater, 122 Hawai'i at 366, 227 P.3d at 532 (2010) ("The phrase 'other qualified witness' is given a very broad interpretation. The witness need only have enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business." (cleaned up))

24

documents, engaged in a "due diligence" process, and reviewed the payment history and accounting associated with the loan. JPMorgan Chase's documents were not, in other words, uncritically incorporated into Caliber's own. They were vetted by Caliber. This pre-incorporation vetting, however nebulously described by Patterson's testimony, is a circumstance that indicates the trustworthiness of the documents.

Patterson's testimony thus satisfies each of the three criteria in Behrendt. The ICA should have held that Caliber's incorporated records, as authenticated by Salyers[9] and Patterson's testimony, were admissible under HRE Rule 803(b)(6).

**E. The evidence, taken together, shows U.S. Bank had standing at the time it filed suit**

Having addressed the *admissibility* of copies of the Note and Caliber's incorporated records, we are left with an evidentiary issue: has U.S. Bank established its standing to sue Verhagen?

In Reyes-Toledo, we held that a foreclosing plaintiff must establish its standing to bring a lawsuit at the commencement of the proceeding, not merely at the summary judgment stage. 139

---

[9] Salyers' testimony contributes to the authentication of records Caliber incorporated from JPMorgan Chase by describing: (1) Caliber's incorporation of those records in the normal course of its business; and (2) Caliber's reliance on those records. Salyers' testimony standing alone, however, would be insufficient to establish that Caliber's incorporated records are admissible under HRE Rule 803(b)(6). This is because Salyers' testimony does not describe any other circumstances, beyond mere incorporation and reliance, that indicate the incorporated records' trustworthiness.

Hawai'i 361, 369, 390 P.3d 1248, 1256.  In the mortgage foreclosure context, we noted, the requirement of standing overlaps with a plaintiff's burden of proving its entitlement to enforce the subject promissory note.  Id. at 367, 390 P.3d at 1254.

Whether a party is entitled to enforce a promissory note is determined by application of HRS § 490:3-301, which provides:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 490:3-309 or 490:3-418(d).  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

U.S. Bank maintains that, at the time it initiated suit, it was entitled to enforce the Note because it held the indorsed-in-blank Note.  U.S. Bank supports this claim with the following evidence: (1) Jennifer Martin's February 9, 2016, certification certifying, under penalty of perjury, that at 12:51 p.m. on February 9, 2016, she personally verified Caliber's possession of the original Note and attaching an indorsed-in-blank copy of the Note; (2) a bailee letter dated December 9, 2016, establishing that Caliber sent the Note to U.S. Bank's counsel at that time; and (3) Patterson's sworn testimony that, based on her review of Caliber's records, and her knowledge of how those records are made and maintained in the ordinary course of business, "Plaintiff, or its agent on Plaintiff's behalf, was in

possession of the original wet-ink, indorsed in blank Note when the [Verhagen] foreclosure action was commenced on March 23, 2016, and since."

The ICA held that this evidence was insufficient to establish U.S. Bank's standing on the day it filed suit since "the Certification does not certify possession of the original Note by U.S. Bank at the time the Verified Complaint was filed, and the Attorney Bailee Letter was executed approximately nine months after U.S. Bank commenced the foreclosure action." As U.S. Bank observes, the implication of this holding is that only evidence gathered *on the day the complaint was filed* would be sufficient to establish a foreclosing plaintiff possessed the subject promissory note at the time of filing. This is not, and should not be, the standard.

U.S. Bank's briefing raises a compelling question: if the Note wasn't in Caliber's possession between February 9, 2016, and December 9th of the same year, where did it go? Here, Patterson testified that based on her knowledge of Caliber's records and record-keeping practices, U.S. Bank had actual or constructive possession of the Note at the time it filed the complaint. Such testimony, standing alone and uncorroborated by documentary evidence, would be insufficient to establish U.S. Bank possessed the Note when it filed the complaint. Here, however, there is admissible documentary evidence showing that

27

U.S. Bank possessed the Note both a mere six weeks before the filing of the complaint and at the time of summary judgment. Collectively, the evidence presented by U.S. Bank thus establishes the bank's possession of the Note on the day the complaint was filed.[10]

Of course, a defendant may counter this inference of possession at the time of filing with evidence setting forth "specific facts showing that there is a genuine issue" as to whether the plaintiff actually possessed the subject note at the time it filed suit. See Hawai'i R. Civ. Pro. Rule 56(e). But that has not happened here. Verhagen has not offered any evidence undermining Patterson's testimony that Caliber possessed the Note on March 23, 2016. And he has not offered any evidence that the Note left U.S. Bank's custody in the ten months between Martin's certification and the bailee letter. Nor has he offered any evidence contradicting or calling into question Martin's certification. Accordingly, U.S. Bank's evidence establishes that the bank possessed the Note, indorsed in blank,[11] at the time it initiated suit. The bank thus has

---

[10]     We reach this conclusion in part because Martin's certification pre-dates the filing of the complaint by less than two months. An older certification, and a correspondingly larger gap between the certification's date and that of the complaint, would leave more room for a "genuine issue" as to whether U.S. Bank actually possessed the Note when it sued Verhagen.

[11]     Importantly, where, as here, standing is based on possession of a Note indorsed in blank, the admissible evidence must also show that the blank indorsement occurred before the initiation of the suit. See HSBC Bank USA, Nat'l Ass'n v. Moore, CAAP-17-0000478, 2018 WL 1887197 (Haw. App. Apr. 20,

standing to foreclose against Verhagen under Reyes-Toledo.

The evidence that the Note existed, that Verhagen was in default under its terms, and that Verhagen received the necessary notice of his default is undisputed. There is no genuine issue as to the Note's existence, Verhagen's default under its terms, or Verhagen's receipt of the necessary notice. U.S. Bank is entitled to summary judgment and the ICA erred in reversing the circuit court's grant of summary judgment to U.S. Bank.

**F.   Verhagen waived his objections to U.S. Bank's motion to ratify**

"Issues not properly raised on appeal will be deemed to be waived." Pele Defense Fund v. Paty, 73 Haw. 578, 613, 837 P.2d 1247, 1268 (1992). Verhagen had an opportunity to oppose U.S. Bank's motion to ratify but he did not do so. As such, he has waived his objections to that motion. Regardless, the ICA did not err in considering whether the Patterson declaration was admissible or sufficient to establish U.S. Bank's entitlement to summary judgment.[12]

---

2018). Here, this requirement is satisfied because the copy of the Note attached to Martin's certification and authenticated by Patterson's testimony is indorsed in blank.

[12] Even when a motion for summary judgment is wholly unopposed, the motion should only be granted when the moving party submits facts establishing there are no genuine issues of material fact and that it is entitled to summary judgment as a matter of law. See Arakaki v. SCD-Olanani Corp., 110 Hawai'i 1, 7-8, 129 P.3d 504, 510-11 (2006). As the ICA explained in its Amended SDO, its evaluation of whether or not U.S. Bank has met its burden on summary judgment is not constrained by Verhagen's failure to object to certain

### III. CONCLUSION

We vacate the ICA's October 28, 2020, judgment on appeal and October 2, 2020, amended summary disposition order and affirm the circuit court's October 8, 2018, amended judgment and amended order granting plaintiff's motion for summary judgment and for interlocutory decree of foreclosure.

<table>
<tr><td>

Paul Alston,<br>
(David B. Rosen, David E.<br>
McAllister, Justin S. Moyer,<br>
and Madisson L. Heinze,<br>
on the briefs)<br>
for petitioner

Keith M. Kiuchi,<br>
for respondent

Patricia J. McHenry,<br>
for Amicus Curiae<br>
Federal Housing Finance Agency

</td><td>

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

</td></tr>
</table>



---

evidence at the circuit court level.