**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000495
20-SEP-2024
07:54 AM
Dkt. 173 SO**

CAAP-20-0000495

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR GSR
MORTGAGE LOAN TRUST 2006-3F, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-3F, Plaintiff-Appellee, v.
JEFFERSON HALONA YOUNG; LINDA D. YOUNG; BANK OF AMERICA, N.A.;
DEPARTMENT OF TAXATION-STATE OF HAWAIʻI;
PALEHUA COMMUNITY ASSOCIATION, Defendants-Appellees, and
GABI KIM COLLINS, Defendant-Appellant, and
JOHN DOES 1-20; JANE DOES 1-20; DOE CORPORATIONS 1-20;
DOE ENTITIES 1-20; AND DOE GOVERNMENTAL UNITS 1-20, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC161001282)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Hiraoka and Nakasone, JJ.)

Defendant-Appellant Gabi Kim Collins (**Collins**), self-represented, appeals from the March 16, 2020 Judgment (**Judgment**) entered by the Circuit Court of the First Circuit (**Circuit Court**).[1] Collins also challenges, *inter alia*, the Circuit Court's March 16, 2020 Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment Against All Defendants and for Interlocutory Decree of Foreclosure

---

[1] The Honorable Jeannette H. Castagnetti presided.

(**Foreclosure Decree**), which was entered in favor of Plaintiff-Appellee U.S. Bank National Association, as Trustee for GSR Mortgage Loan Trust 2006-3F, Mortgage Pass-Through Certificates, Series 2006-3F (**U.S. Bank**), on [U.S. Bank's] Motion for Summary Judgment Against All Defendants and for Interlocutory Decree of Foreclosure, filed on March 15, 2019 (**Second MSJ**).

We construe Collins's opening brief as raising the following points of error: (1) the Circuit Court erred in granting the Second MSJ because U.S. Bank did not establish that it had standing to foreclosure on the subject note (**Note**); (2) the Circuit Court erred in entering judgment for U.S. Bank because U.S. Bank did not establish that it provided a notice of default to the borrowers; (3) the Circuit Court erred in failing to order sanctions against U.S. Bank for violating a court order.

In her "Statement of Points of Error," Collins makes various additional statements and arguments related to, *inter alia*, the Circuit Court's rulings on [U.S. Bank's] Motion for Summary Judgment Against All Defendants and for Interlocutory Decree of Foreclosure, filed on April 3, 2017 (**First MSJ**), which was denied without prejudice.[2]

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Collins's points of error as follows:

---

[2] In particular, we note that Collins argues on appeal that the Circuit Court erred in granting summary judgment in favor of U.S. Bank based on a statute of limitations error. However, this argument was not raised in opposition to the Second MSJ and therefore is disregarded. Hawaiʻi Rules of Appellate Procedure (**HRAP**) 28(b).

(1) Collins argues that U.S. Bank lacks standing because the declarations attached to the Second MSJ contain hearsay statements and cannot be the basis for awarding summary judgment. Collins contends that a bailee letter offered by U.S. Bank (**Bailee Letter**) was also hearsay, and did not establish that U.S. Bank had possession of the Note at the time of filing the Complaint. Collins also argues, *inter alia,* that the Declaration of Karelton Chester (**Chester; Chester Declaration**) fails to show personal knowledge, and as such, fails to properly authenticate the Note pursuant to Bank of America, N.A. v. Reyes-Toledo*,* 139 Hawaiʻi 361, 390 P.3d 1248 (2017).

For the Chester Declaration and Declaration of Gina Santellan (**Santellan; Santellan Declaration**) to properly authenticate the Note, Bailee Letter, and other business records, each declaration must satisfy Hawaiʻi Rules of Evidence (**HRE**) Rule 803(b)(6),[3] as interpreted in U.S. Bank N.A. v. Mattos, 140 Hawaiʻi 26, 398 P.3d 615 (2017), and Wells Fargo Bank, N.A. v.

---

[3] HRE Rule 803 states, in relevant part:

**Rule 803  Hearsay exceptions; availability of declarant immaterial.**

. . . .

(b) Other exceptions.

. . . .

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made in the course of a regularly conducted activity, at or near the time of the acts, events, conditions, opinions, or diagnoses, as shown by the testimony of the custodian or other qualified witness, or by certification that complies with rule 902(11) or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness.

Behrendt, 142 Hawaiʻi 37, 414 P.3d 89 (2018), and subsequest Hawaiʻi Supreme Court cases. HRE Rule 803 (b)(6) is satisfied in part because Chester testified that:

> (1) he was an employee of [Nationstar Mortgage LLC d/b/a Mr. Cooper (**Nationstar**)] authorized to sign the declaration on behalf of U.S. Bank, (2) Nationstar maintains the records for the loan on behalf of U.S. Bank, (3) he was familiar with the recordkeeping practices of Nationstar, (4) the records for the loan he reviewed were obtained, kept, maintained and relied upon by Nationstar in the regular course of its business.

In addition, the Chester Declaration satisfies the requirement that,

> . . . a witness may be qualified to provide the testimony required by HRE Rule 803(b)(6) even if the witness is not employed by the business that created the document or lacks direct, personal knowledge of how the document was created. There is no requirement that the records have been prepared by the entity that has custody of them, as long as they were created in the regular course of some entity's business. The witness, however, must have enough familiarity with the record-keeping system of the business that created the record to explain how the record was generated in the ordinary course of business.

Behrendt, 142 Hawaiʻi at 45-46, 414 P.3d at 97-98 (citations and internal quotation marks omitted).

The Santellan Declaration confirms possession of the original Note at the time the Complaint was filed, in the first instance because Santellan testified that:

> (1) she has personal knowledge of the matters set forth in the declaration, (2) she is familiar with [TMLF Hawaii LLLC (**TMLF Hawaii**)]'s record keeping practices, and (3) the records she relied upon are made at or near the time of the occurrence by a personnel with knowledge, kept in the regular course of TMLF [Hawaii}'s business and created as a regular practice.

Here, Santellan, as custodian of records of TMLF Hawaii - the entity that created the Bailee Letter - appears to satisfy HRE (b)(6) in part because she testified that,

> 2. The information in this Declaration is taken from TMLF Hawaii's business records. I have personal knowledge of TMLF Hawaii's procedures for creating these records. They are: (a) made at or near the time of the

4

occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of TMLF Hawaii's regularly conducted business activities; and (c) created by TMLF Hawaii as a regular practice.

Santellan further testified that: (1) she has personal knowledge of the Bailee Letter, as a record of regularly conducted activity (she signed it on behalf of The Mortgage Law Firm PLC (CA-AZ)); and (2) she personally reviewed the Bailee Letter, which shows receipt and possession of the Note, which was kept in physical possession of TMLF Hawaii "since it was received on 01/13/2015" and throughout the duration of this litigation.

For these reasons, we conclude that U.S. Bank properly authenticated the Note and Bailee Letter via the Chester and Santellan Declarations, and established that it possessed the Note at the time of filing the Complaint.

In addition, a foreclosing party "must demonstrate that all conditions precedent to foreclosure under the note and mortgage are satisfied and that all steps required by statute have been strictly complied with" to prove entitlement to foreclose. Reyes-Toledo, 139 Hawaiʻi at 367, 390 P.3d at 1254. Typically, this requires that the plaintiff "prove the existence of an agreement, the terms of the agreement, a default by the mortgagor under the terms of the agreement, and giving of the cancellation notice." Id. A foreclosing plaintiff must also prove that the plaintiff is entitled to foreclose on the note and mortgage. Id.

The "burden to prove entitlement to enforce the note overlaps with the requirements of standing in foreclosure

5

actions." Id. (citation omitted). Under the doctrine of standing, a plaintiff typically must have suffered an injury-in-fact to "justify exercise of the court's remedial powers on his or her behalf." Id. at 368, 390 P.3d at 1255 (citation omitted). For a foreclosing plaintiff, the injury-in-fact is the mortgagor's "failure to satisfy its obligation to pay the debt obligation to the note holder." Id. Thus, a person seeking to judicially foreclose on a mortgage following a promissory note default must establish that it was the "person entitled to enforce the note" as defined by Hawaii Revised Statutes (**HRS**) § 490:3-301 (2008)[4] at the time the foreclosure complaint was filed to satisfy standing and to be entitled to prevail on the merits. Id. at 368-69, 1255-56; see also Mattos, 140 Hawaiʻi at 33, 398 P.3d at 622.

The court in Mattos held that a witness may be qualified to provide the testimony required by HRE Rule 803(b)(6) even if the witness is not employed by the business that created the document or lacks direct, personal knowledge of how the document was created. 140 Hawaiʻi at 32, 398 P.3d at 621. "There is no requirement that the records have been prepared by the entity that has custody of them, as long as they were created in the regular course of some entity's business." Id. (quoting

---

[4]     HRS § 490:3-301 provides:

> **§ 490:3-301 Person entitled to enforce instrument**. "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 490:3-309 or 490:3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

State v. Fitzwater, 122 Hawaiʻi 354, 366, 227 P.3d 520, 532 (2010)). The witness, however, must have enough familiarity with the record-keeping system of the business that created the record to explain how the record was generated in the ordinary course of business. Id.

Here, the Note was originally created by Countrywide Home Loans, Inc. and subsequently transferred to U.S. Bank. Chester declares that he has familiarity with the "record-keeping practices" of U.S. Bank's loan servicer, Nationstar. As discussed below, the incorporated records doctrine applies to our review of the Chester Declaration.

The standard changes when records from one business are received and incorporated into the receiving business's records. Mattos, 140 Hawaiʻi at 32, 398 P.3d at 621. Incorporated records may in some circumstances be regarded as "created" by the receiving business; in this case, Nationstar was the receiving business. See Behrendt, 142 Hawaiʻi at 45, 414 P.3d at 97. Incorporated records are admissible under HRE Rule 803(b)(6) when a custodian or qualified witness testifies that the documents were incorporated and kept in the normal course of business, that the incorporating business typically relies upon the accuracy of the contents of the documents, and the circumstances otherwise indicate the trustworthiness of the document. Id.; see also Fitzwater, 122 Hawaiʻi at 367-68, 227 P.3d at 533-34; Mattos, 140 Hawaiʻi at 32, 398 P.3d at 621.

In U.S. Bank Tr., N.A. v. Verhagen, the supreme court stated:

> If each of these three conditions is satisfied, an incorporated record is admissible even in the absence of testimony concerning its actual creation. This is because evidence that a business has incorporated and relied on a record created by another organization speaks directly to that record's reliability. When accompanied by testimony about other circumstances that also indicate the record's trustworthiness, such evidence is an acceptable substitute for testimony concerning a record's actual creation.

149 Hawaiʻi 315, 326, 489 P.3d 419, 430 (2021).

In Verhagen, the pertinent declarations met the first two requirements of the incorporated records doctrine because both witnesses had testified that the "records were incorporated into [the subsequent holder's] own and kept and maintained [by the subsequent holder] in the ordinary course of its business" and that the loan servicer "used and relied on the incorporated records in the regular course of its loan servicing business." Id.

Here, the Chester Declaration states, in part:

> 1.    I am authorized to sign this Declaration on behalf of Plaintiff, [U.S. BANK], as an authorized signer of [Nationstar], which is Plaintiff s servicing agent for the subject loan ("the loan").
>
> . . . .
>
> 4.    The information in this Declaration is taken from Nationstar's business records. I have personal knowledge of Nationstar's procedures for creating these records. They are:  (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of Nationstar's regularly conducted business activities; and (c) created by Nationstar as a regular practice.
>
> . . . .
>
> 27.    The prior loan servicers for this mortgage loan were Specialized Loan Servicing, LLC and Bank of America, N.A. ("Prior Servicers").
>
> 28.    Upon becoming Plaintiff's loan servicer, Nationstar took custody and control of loan documents and business records of the Prior Servicers and incorporated all such records into the business records of Nationstar.

29. Before the Prior Servicers' records were incorporated into Nationstar's own business records, it conducted an independent check into the Prior Servicers' records and found them in keeping with industry wide loan servicing standards and only integrated them into Nationstar's own business records after finding the Prior Servicers' records were made as part of a regularly conducted activity, met industry standards and determined to be trustworthy.

. . . .

33. In performing its services to the Plaintiff, Nationstar relies upon the accuracy of the Prior Servicer's records and those records are now a part of and used for all purposes in the conduct of Nationstar's regularly conducted activity of keeping and maintaining its own business records.

34. I am familiar with the record-keeping system of the Prior Servicers that created the records and can explain how the records were generated in the ordinary course of business.

Chester does not purport to be a custodian of Nationstar's records per se, rather he testifies concerning his personal knowledge of Nationstar's records and procedures based on his job responsibilities with Nationstar. The term "other qualified witness" is given a very broad interpretation if the witness demonstrates the requisite familiarity with the record-keeping system of the business in question. Fitzwater, 122 Hawaiʻi at 366, 227 P.3d at 532. Here, Chester meticulously delineates Nationstar's acquisition process, further stating in part:

30. Nationstar's acquisition process is handled by the Obligation Management Group ("OM Group"). The OM Group is one of the departments that supports the due diligence process to determine any deal specific items that warrant special handling during or post transfer. The due diligence process often requires a review of seller/prior servicer operational functions and possibly loan documents. The OB Group also supports contract review as needed with direction through the Transaction Management Group ("TM Group"). In some instances, during the contract review, it may be necessary to negotiate with the seller/prior servicer and make adjustments to Nationstar's instructions regarding the transfer of seller/prior servicer records. These processes are reviewed by Nationstar.

31. Nationstar has many functions that ensure the trustworthiness of the records being integrated into

Nationstar. Nationstar's Acquisition group updates LSAMS with all relevant information regarding the boarding of prior servicer records. Nationstar initiates a kick-off call with the prior servicer to introduce key participants for both organizations and to set the expectations of the transfer. This includes confirmation that the prior servicer has received and read Nationstar's transfer instructions. Project milestones are also agreed upon by all parties. The prior servicer and Nationstar initiate the investor approval requirements and reconcile to confirm the exact loans expected to transfer. A loan level reconciliation is also preformed to the list for notices that would tie to each item. Upon receipt of the prior servicer source data, reconciliation is performed on the initial set of data received and remediation is completed and documented as needed. The Acquisition group then completes a field-level data mapping process with support and approval from Nationstar and the prior servicer. The mapping process captures all fields required for servicer including balances and individual amounts as well as all other source data elements. Then, the prior servicer provides location of physical loan documents and all relative images to support quality control review. Reconciliation is performed to identify any missing images and communicated to the prior servicer to support remediation.

32. Finally, Nationstar completes three sets of test of preliminary and final data within the servicing platform test region before going live for servicing. During each test, the Acquisition group completes reconciliation of data elements with confirmation from the prior servicer. This includes key data elements for various servicing areas as well as monetary values. Nationstar also completes validation during the testing process and supports remediation of logical data edit checks as needed. Nationstar also reviews specific documents as the source of truth to support validation. Nationstar's Master Audit Group completes a level of documents to data validation and adjust any data elements as needed. Exceptions are noted and a review is completed to determine if additional process improvement or data checks may be implemented for future transfers.

Thus, as Chester demonstrates detailed familiarity with Nationstar's record-keeping system, the Circuit Court did not err in determining that he is a qualified witness with respect to Nationstar's incorporated records, including the Note and Bailee Letter. However, we recognize that the circumstances must otherwise indicate the trustworthiness of the document(s). Mattos, 140 Hawaiʻi at 31-32, 398 P.3d at 621-22. In Verhagen, the supreme court noted that, to establish trustworthiness in the incorporated records doctrine context, a qualified witness must testify as to whether the incorporating entity engaged in "due

diligence" processes or vetting procedures. 149 Hawaiʻi at 326, 489 P.3d at 430. Here, Chester unequivocally describes Nationstar's vetting procedures beyond what is specifically required under Verhagen.

In sum, based on the Declarations and supporting documents filed in conjunction with the Second MSJ and the Chester Declaration, U.S. Bank established its standing to foreclose on the subject Note.

Somewhat relatedly, Collins argues that U.S. Bank failed to attach a mortgage servicing or agency agreement to the Second MSJ. However, Collins fails to identify where in the record that argument was raised in the Circuit Court. As the issue was not raised before the Circuit Court, it will be disregarded. See HRAP Rule 28(b)(4).

(2) Collins argues that the Circuit Court erred in entering judgment for U.S. Bank because U.S. Bank did not establish that the required notice of default was provided to the borrowers. However, with the Second MSJ, and as supported by the Chester Declaration, U.S. Bank provided a copy of the notice of default and acceleration that was provided to the borrowers by the loan servicer at the time, Bank of America N.A. In her opposition to the Second MSJ, Collins did not raise any evidentiary objection or argue that there was a genuine issue of material fact related to the notice of default and acceleration. As Collins's argument regarding the notice of default was not raised before the Circuit Court in conjunction with the Second

MSJ, it will be disregarded.  <u>See</u> HRAP Rule 28(b)(4); <u>see</u> <u>also</u> <u>Munoz v. Yuen</u>, 66 Haw. 603, 605-06, 670 P.2d 825, 827 (1983).

(3)  Collins argues that the Circuit Court erred in failing to order sanctions against U.S. Bank for violating a court order.  Collins submits that "monetary sanctions should be levied" for purported failure to comply with a prior discovery order.  Upon review, to the extent we are able to discern Collins's argument, we conclude that the Circuit Court did not abuse its discretion in denying her various requests for sanctions against U.S. Bank.

For these reasons, the Circuit Court's March 16, 2020 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, September 20, 2024.

| On the briefs: | /s/ Katherine G. Leonard<br>Acting Chief Judge |
|---|---|
| Gabi Kim Collins,<br>Defendant-Appellant *Pro Se*. | /s/ Keith K. Hiraoka<br>Associate Judge |
| Andrew J. Lautenbach,<br>Nainoa J. Watson,<br>(Starn O'Toole Marcus &<br> Fisher).<br>for Plaintiff-Appellee. | /s/ Karen T. Nakasone<br>Associate Judge |