<span style="color:red">**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-24-0000601**
**22-MAY-2026**
**08:22 AM**
**Dkt. 50 SO**</span>

NO. CAAP-24-0000601

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

U.S. BANK NATIONAL ASSOCIATION, SUCCESSOR TRUSTEE TO BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO LA SALLE BANK, NA AS TRUSTEE FOR WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES WMALT SERIES 2006-AR6 TRUST, Plaintiff-Appellee,
v.
DAVID D. GOODWIN, Defendant-Appellant,
and
E*TRADE BANK; UNITED STATES OF AMERICA; ASSOCIATION OF UNIT OWNERS OF 54-300 AND 54-302 HAUULA, Defendants-Appellees,
and
JOHN AND MARY DOES 1-20; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CC171001561)

## SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Hiraoka and Guidry, JJ.)

This is a judicial foreclosure case. Defendant-Appellant David D. Goodwin (**Goodwin**) appeals from the July 29, 2024 "Findings of Fact [(**FOFs**)]; Conclusions of Law [(**COLs**)]; Order Entering Foreclosure Decree" (**Foreclosure Order**), and the

August 12, 2024 "Judgment," both entered by the Circuit Court of the First Circuit (**circuit court**).[1]

Goodwin owned real estate in Honolulu (**Property**). In April 2006, Goodwin executed a promissory note (**Note**) in favor of lender National City Bank of Indiana. The Note is indorsed in blank. Goodwin secured the Note with a mortgage on the Property (**Mortgage**), executed in favor of National City Mortgage (**NCM**), a division of National City Bank of Indiana. The Mortgage encumbers the fee simple interest in the Property.

Plaintiff-Appellee U.S. Bank National Association, Successor Trustee to Bank of America, National Association, Successor by Merger to La Salle Bank NA, as Trustee, for Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2006-AR6 Trust's (**U.S. Bank**), through its loan servicer Select Portfolio Servicing, Inc. (**SPS**), currently has possession of the Note. On September 25, 2017, U.S. Bank filed its Complaint in the underlying foreclosure action.

Goodwin asserts three points of error on appeal, contending that the circuit court erred by: (1) "den[ying] . . . Goodwin's Motion to Restrict Evidence of [U.S. Bank's] Possession of Note to December 3, 2008"; (2) making FOFs 9

---

[1] The Honorable Lisa W. Cataldo presided.

through 12 and 16 through 19;[2] and (3) making COLs 7, 8, 15, 17, 18, 19, and 21.[3]

---

[2]     FOFs 9 through 12, and 16 through 19, state,

> 9.   [U.S. Bank] called Patrick Pittman [(**Pittman**)] as the only trial witness.  Pittman has worked for [**SPS**] for approximately 22 years, and holds the position of Litigation Director.  One of his responsibilities is as a "document control officer."  [Pittman] testified that he has access to the records and files kept and maintained by SPS, and he is familiar with SPS's business recordkeeping practices as a result of the training he has had and his 22-year tenure at SPS.  Among other things, Pittman testified about SPS's incorporation of business records from the prior servicer; the data vetting process used to seek any data discrepancies within the documents received from the prior servicer; the fact that this vetting process was completed with no outstanding discrepancies related to the subject loan; the vault tracking report (P-6), which reflects the movement of the files that SPS holds within its vault on-site; the collateral file (P-8) (i.e., the file that holds all the original loan documents, including in this case, the original Note); and the document tracking reports that reflect the tracking of all documents that SPS maintains on behalf of its clients (P-4, up to May 15, 2019) and P-13).

> 10.   In sum, then, Pittman testified that he is familiar with the practices and procedures of SPS and the systems of record that SPS uses to create and record information related to the residential mortgage loans that it services and its incorporation process in validating the records of prior servicers, including the process by which information is entered into those systems and how those records are maintained because he received training in practically every department within SPS and utilizes them on a regular basis as a routine function of his employment.

> 11.   Pittman identified SPS's software system platform as "Select CE."  This "master system" has a subsystem from which Exhibit P-6 was obtained.  While Pittman could not remember the name of that subsystem, he has access to it, pulled Exhibit P-6, and provided it to counsel.

> 12.   Based on his demeanor and credibility while testifying, the Court finds Pittman's testimony to be credible.

> .  .  .  .

(continued . . .)

3

[2](. . . continued)

16. Exhibit P-13 reflects all transfers of the possession of the Note. Had SPS transferred possession of the original Note prior to sending it to its counsel's office on or about April 12, 2024, that transfer would have been noted on Exhibit P-13—and there is no such notation. There was no other transfer of the Note except for when SPS received it in 2014 and when SPS sent it to counsel in April 2024.

17. [Goodwin's] cross-examination of Pittman did not undermine Pittman's testimony regarding SPS's possession of the Note; nor did [Goodwin] offer any evidence that the Note left SPS's possession at any time.

18. SPS, on behalf of [U.S. Bank], gained possession of the Note on or about June 25, 2014.

19. [U.S. Bank], through SPS, continuously maintained possession of the Note, up until it sent it to its counsel herein on or about April 12, 2024.

(Citations omitted.)

[3] COLs 7, 8, 15, 17, 18, 19, and 21 state, in relevant part,

7. As a matter of law, entitlement to enforce the Note also grants entitlement to enforce the Mortgage. . . .

8. [U.S. Bank] was entitled to enforce the underlying promissory note because it was in possession of the Note, which was duly indorsed in blank from June 2014, onwards, including when this action was commenced.

. . . .

15. [U.S. Bank] proffered its evidence in accordance with [Hawaii Rules of Evidence Rule] 803(b)(6), which establishes a hearsay exception for "records of regularly conducted activity." . . .

. . . .

17. Further, under Rule 803(b)(7), evidence that a matter is not included in business records kept in accordance with Rule 803(b)(6) is admissible "to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind that a . . . record . . . was regularly made and preserved, unless the sources of information or other circumstances indicate lack of trustworthiness." "The absence of an entry in a business record is technically not hearsay because it is not, in and of itself, a statement offered in evidence to prove the truth of the matter asserted." . . . "Rule 803(b)(7) nevertheless classifies the absent business record as a hearsay exception." . . .

(continued . . .)

Upon careful review of the record, briefs, and relevant legal authorities, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Goodwin's points of error[4] as follows:

(1) Goodwin contends that the circuit court erred by denying "Goodwin's Motion to Restrict Evidence of [U.S. Bank's] Possession of Note to December 3, 2008." Goodwin's motion argued that U.S. Bank must be required to establish that it was entitled to enforce the Note at the time U.S. Bank's predecessor in interest, La Salle Bank NA (**La Salle**), commenced a prior foreclosure action on the Property in case no. 1CC081002502 on December 3, 2008 (**2008 case**) that remained pending until

---

[3](. . . continued)

"[I]f a business record designed to note every transaction of a particular kind contains no notation of such a transaction between specified dates, no such transaction occurred between those dates." . . .

18. Pittman's testimony at trial established that he is a qualified witness with respect to the business records of SPS including the meaning and significance of the non-existence of entries in those business records.

19. Based upon a preponderance of the evidence, [U.S. Bank] proved all essential elements of its case and is entitled to judgment as a matter of law pursuant to [Hawai'i Rules of Civil Procedure Rule] 54(b), and an interlocutory decree of foreclosure.

. . . .

21. [U.S. Bank] is entitled to have its Mortgage foreclosed upon the Property as described in Exhibit "A," and to have the Property sold in a manner provided by law.

(Citations omitted.)

[4] We consolidate and reorganize Goodwin's points of error herein.

5

February 5, 2024.[5]  In denying the motion, the circuit court effectively determined that U.S. Bank must establish its standing at the time it filed the Complaint in the instant action.

"The issue of standing is reviewed de novo on appeal." Tax Found. of Haw. v. State, 144 Hawaiʻi 175, 185, 439 P.3d 127, 137 (2019) (cleaned up).  It is well settled that "a person seeking to judicially foreclose on a mortgage following a promissory note default must establish that it was the 'person entitled to enforce the note' as defined by [Hawaii Revised Statutes (**HRS**)] § 490:3-301 [(2008)] **at the time the foreclosure complaint** was filed to satisfy standing."  Wells Fargo Bank, N.A. v. Behrendt, 142 Hawaiʻi 37, 41, 414 P.3d 89, 93 (2018) (emphasis added) (cleaned up); see also Bank of Am., N.A. v. Reyes-Toledo, 139 Hawaiʻi 361, 367, 390 P.3d 1248, 1254 (2017) ("A foreclosing plaintiff's burden to prove entitlement to enforce the note overlaps with the requirements of standing in foreclosure actions as standing is concerned with whether the parties have the right to bring suit." (cleaned up)).

---

[5]     The record of case no. 1CC081002502 reflects that U.S. Bank was not a party to the 2008 case; indeed, U.S. Bank could not have been a party to that proceeding, as it did not acquire the Note until June 25, 2014. Goodwin did not file an answer, or otherwise respond, to La Salle's complaint.  La Salle filed a "Notice of Dismissal Without Prejudice of All Claims and Parties and Release of Notice of Pendency of Action," on February 5, 2024.

The record of case no. 1CC081002502 reflects that U.S. Bank was not a party to the 2008 case. U.S. Bank and Goodwin dispute as to whether Goodwin was served. Goodwin did not file an answer, or otherwise respond, to La Salle's complaint. It appears that there were no party filings in the 2008 case between August 2, 2012, when La Salle filed its eighth ex parte motion for an extension of time to complete service of the complaint, and February 5, 2024, when the matter was dismissed by La Salle's filing of a "Notice of Dismissal Without Prejudice of All Claims and Parties and Release of Notice of Pendency of Action."

U.S. Bank commenced the underlying foreclosure action upon its filing of the Complaint on September 25, 2017. U.S. Bank represented that the 2008 case should have been dismissed earlier, but that it was not due to "error." On this record, we conclude that U.S. Bank was therefore required to establish its standing to enforce the Note on September 25, 2017.

(2) Goodwin contends that the circuit court erred by making FOFs and COLs regarding U.S. Bank's standing to bring this foreclosure action. "A trial court's findings of fact are reviewed under the clearly erroneous standard of review. Conclusions of law, in contrast, are reviewed de novo under the right/wrong standard of review." Behrendt, 142 Hawai'i at 40-41, 414 P.3d at 92-93.

7

To have standing, U.S. Bank was required to establish that it was a "person entitled to enforce the note" on September 25, 2017. Id. at 41, 414 P.3d at 93. It could do that by demonstrating that its agent was in physical possession of the Note on September 25, 2017. See HRS § 490:3-301 (defining "'[p]erson entitled to enforce' an instrument" as, inter alia, "the holder of the instrument"); see also U.S. Bank Tr., N.A. v. Verhagen, 149 Hawai'i 315, 317, 327-28, 489 P.3d 419, 421, 431-32 (2021).

At trial, U.S. Bank demonstrated its possession of the original Note through Pittman's testimony. Pittman testified that SPS is the mortgage servicer and attorney-in-fact for U.S. Bank in the instant case. In his capacity as litigation director with SPS, Pittman had access to the records and files kept and maintained by SPS. He was familiar with SPS' business recordkeeping practices through his training and his 22 years with SPS. Pittman described the process SPS implements in incorporating prior business records, such as the Loan records that SPS received from the prior mortgage servicer, as follows:

> [SPS] incorporated [prior servicer's] business records into our business records and rely on them for the purposes of further servicing the loan on behalf of the client.
>
> . . . .
>
> [To incorporate the records,] we first did a data vetting process seeking any data discrepancies within the information that we received from [the prior servicer]. And if there were any data discrepancies that were outstanding at the time of the scheduled servicing transfer

of their loan, but those loans would not come into [SPS'] system boarding, or boarding system I should say. They would stay with the prior servicer . . . until that data discrepancy is cured.

So, therefore, because we are servicing this loan, that means that the data vetting process was complete with no outstanding discrepancies.

Pittman testified that he had personal knowledge of the subject Loan. Pittman testified that he had knowledge that SPS was in possession of the original Note on September 25, 2017 because he had "reviewed [SPS'] business records that reflect the date of [SPS'] possession of the original [N]ote." These records included: SPS' vault tracking report, which reflected that the collateral loan file for the Note was placed within SPS' on-site vault on June 25, 2014; SPS' document tracking report, which reflected that SPS was in physical possession of the collateral loan file, including the original Note, from June 25, 2014 through April 12, 2024; the bailee letter, which showed transmission of the original Note to U.S. Bank's counsel on April 12, 2024; the original Note; and the notice of default that Pittman testified was mailed to Goodwin at the subject Property on October 1, 2013 by first class mail.

Goodwin's reliance on Verhagen and Deutsche Bank National Trust Co. v. Yata, 152 Hawai'i 322, 526 P.3d 299 (2023), is misplaced. Both Verhagen and Yata addressed whether, at the summary judgment stage, there was a genuine issue of material fact as to foreclosing plaintiff's possession of the note at the

time the complaint was filed. <u>Verhagen</u>, 149 Hawaiʻi at 327-28, 489 P.3d at 431-32; <u>Yata</u>, 152 Hawaiʻi at 332-36, 526 P.3d at 308-13.  Here, the circuit court conducted a jury-waived trial, at which Goodwin's counsel cross-examined Pittman.  The circuit court heard and weighed the evidence presented, and made FOFs and COLs as to U.S. Bank's standing.

On this record, we conclude that the challenged FOFs were not clearly erroneous, and the challenged COLs were not wrong.  The circuit court did not err in determining that U.S. Bank possessed the Note at the time the Complaint was filed, and that it therefore had standing to bring this foreclosure action.

For the foregoing reasons, we affirm the Foreclosure Order and Judgment.

DATED: Honolulu, Hawaiʻi, May 22, 2026.

On the briefs:

Keith M. Kiuchi,
for Defendant-Appellant.

Daniel K. Kikawa,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge